The QUAKER OATS COMPANY,
Plaintiff/Appellee,

v.

Donald W. JACKSON, Commissioner of
Revenue, State of Tennessee,
Defendant/Appellant.

Supreme Court of Tennessee,
at Jackson.

Jan. 11, 1988.

Rehearing Denied Feb. 16, 1988.

William H.D. Fones, Jr., Eugene J. Podesta, Jr., Memphis, for plaintiff/appellee.

W.J. Michael Cody, Atty. Gen. and Reporter, Charles L. Lewis, Deputy Atty. Gen., H. Rowan Leathers, III, Asst. Atty. Gen., Nashville, for defendant/appellant.

## OPINION

BROOKS McLEMORE, Chancellor (Ret.), Special Judge by Designation.

The trial court ordered a refund of sales and use taxes paid under protest by plaintiff-appellee, Quaker Oats Company, hereinafter designated plaintiff, based upon a finding that the material taxed was "consumed" by plaintiff. The Tennessee Commissioner of Revenue has appealed and we reverse.

The Commissioner assessed the sales and use tax on a catalyst, 5% palladium on alumina (palladium catalyst), used by plaintiff in the manufacture of furan at its Memphis manufacturing facility. The palladium catalyst is purchased from Engelhardt Industries of New Jersey. The tax period in question is April 1, 1981 through March 31, 1984.

At the facility, the palladium catalyst on alumina is placed into a reactor with calcium acetate and liquid furfural. After pressure and heating, the subsequent reaction produces furan gas which is boiled off and captured. A constant level of furfural is maintained anywhere from 32 to 60 hours (48 hours on the average). At the end of these periods the process becomes inefficient and rapidly tails off. Upon completion, the liquid furfural is separated from the remaining materials which form a black sludge. The furfural is returned to the manufacturing process to minimize loss. The sludge, consisting of palladium catalyst on alumina, tars, polymers, and other

materials is collected and shipped to Engelhardt for recovery of pure palladium.

The actual catalytic agent is the palladium which constitutes 5% of the palladium on alumina catalyst. The alumina, the other 95% of the material, is used because it is a very porous or sponge-like material that has 300 square meters of surface per gram or 2.6 million times the surface area of similarly sized pure palladium. This characteristic is essential to the economical production of furan. The reaction requires surface contact with the active sites of the palladium. By increasing the surface contact, the direct contact between the catalyst and the reactant is increased, along with the efficiency of the reaction. The reaction effectively ends because tars and polymers fill in the porous alumina, and other chemicals in the process act as poison on the palladium.

The spent palladium on alumina catalyst or sludge has no further use in this form for plaintiff. Pure palladium, however, is expensive and Engelhardt has the capacity to separate out approximately 85% of the original amount of the palladium from the remaining materials. Engelhardt then uses the recovered palladium to manufacture a new palladium catalyst which is shipped to their customers, including plaintiff. Plaintiff receives an unspecified amount of credit on its account with Engelhardt based on the value of the recovered palladium.

The legislature has imposed a tax on the "sale at retail" or "use" of tangible personal property in this state. Tennessee Code Annotated § 67–6–101 *et seq.* In defining a "sale at retail" or "use," the legislature excluded certain industrial materials used in the future processing, manufacturing, or conversion into finished articles. Specifically, T.C.A. § 67–6–102(13)(E) states:

> "Sale at retail," "use," "storage," and "consumption" shall not include the sale, use, storage or consumption of industrial materials and explosives for future processing, manufacture or conversion into articles of tangible personal property for resale where such industrial materials and explosives become a component part

of the finished product or are used directly in fabricating, dislodging, sizing, converting, or processing such materials or parts thereof, ...

The Commissioner of Revenue, based on the exclusion from the definition of "sale at retail" provided for industrial materials set forth above, promulgated .Rule 1320–5–1–.40(2) (referred to as "Rule 40") which provides:

(1) Materials and taxable services bought for future processing, manufacturing or conversion into articles of tangible personal property for resale, where such materials become a component part of the finished products, are not subject to Sales or Use Tax.

(2) Materials and supplies coming in direct contact with, and which are consumed within twenty-five (25) consecutive calendar days, in the processing of manufactured products, are not subject to the Sales or Use Tax. Unless materials and supplies come in direct contact with and are consumed within twenty-five (25) consecutive calendar days, they will not be considered as industrial materials or supplies exempt from the Sales or Use Tax. The time period, here indicated, shall apply to any single article in the solid state or to the contents of a container in which liquid is held for introduction for direct contact with the product being manufactured.

The Commissioner in assessing the tax took the position that materials which are totally consumed during an industrial process or which, after use in this manner, have only minimal salvage value, may be purchased exempt from sales or use tax. However, when catalysts or industrial materials are first used in the industrial process, cleansed, or purified and then re-introduced back into the industrial process then these materials have not been consumed and therefore, have not met the requirements for exemption.

Two issues are presented:

(1) Whether the consumption requirement of Rule 40 is void as an unreasonable

and arbitrary exercise of the Commissioner's rule-making power, and

(2) Whether the plaintiff "consumed" the palladium catalyst for purposes of Rule 40.

■ T.C.A. § 67–6–402 authorizes the Commissioner to make reasonable rules not inconsistent with the taxing statutes. In the absence of a clear showing that rules are arbitrary or contrary to statute, the Court should not substitute its judgment for the Commissioner's. *Pidgeon–Thomas Iron Company v. Shelby Co.,* 217 Tenn. 288, 397 S.W.2d 375 (1965). On the other hand, rules contrary to the express directives of the taxing statute are void. *Coca–Cola Bottling Co. v. Woods,* 620 S.W.2d 473 (Tenn.1981).

The trial court found that the rule was not unreasonably interpretative of the statute but was vague as to the meaning of consumption.

Plaintiff contends that because the palladium catalyst on alumina was directly used in the process of manufacture that it met the requirements for the statutory exemption, and that the consumption requirement is a second and additional requirement to the statutory requirement of direct use and such additional requirement invalidates the rule.

The Commissioner argues that the rule merely clarifies what the legislature intended. That the legislature intended that the "component part" exemption and the "used directly" be on an equal footing and that the consumption requirement simply does that. That is, both the "direct use" and the "component part" aspects of the exemption statute assume that the exempt product will be fully used. This requirement is met in the "component part" exemption without specific reference to consumption, because the statute provides in effect that to be exempt the material becomes physically part of the ultimate product. The "direct use" exemption, on the other hand, involves materials that will not physically be part of the ultimate product. The consumption requirement therefore is necessary and is a reasonable interpretation of the exemption statute as a whole that the exempt materials be fully utilized in the manufacturing of the ultimate product.

Additionally, the statutory language "used directly" has two separate components, "directly" and "used." The parties stipulated that the product was used "directly." An examination of other provisions of the Sales Tax Law sheds light on the "used" component. T.C.A. § 67–6–102(18)(B) defines "use" to mean and include "the consumption of any other services and amusements taxable under this chapter." Also, T.C.A. § 67–6–102(19) defines "use tax" to include the "use," the "consumption," the "distribution," and the "storage" as herein defined.

We find merit in these arguments and we hold that the consumption requirement of Rule 40 is a reasonable interpretation of the statutory "used" in the exemption statute and the Rule does not go beyond the scope of the statute.

■ On the question of whether the plaintiff "consumed" the palladium catalyst for the purposes of Rule 40, the Chancellor held that while the resulting sludge had significant value, consumption is "the full utilization of an item to the point that it no longer has any use to the manufacturer, in this instance, in the manufacturing process." Plaintiff accordingly argues that consumption occurs when there is no further use for the material in the taxpayer's manufacturing process.

The Commissioner argues that material is not consumed for purposes of Rule 40 until "it has been completely done away with, reduced to nothing more than mere scrap," and since the sludge containing the palladium catalyst at the end of the process has significant economic value, and is not simply scrap of minimal value, it has not been "consumed."

This Court has previously ruled that § 67–6–102(13)(E) is an exemption statute and is to be construed strictly against the taxpayer. "All doubts must be resolved in favor of the State and against the exemptions." *Phillips & Buttorff Mfg. v. Carson,* 188 Tenn. 132, 217 S.W.2d 1 (1949). In that case this Court determined what was meant by "directly." This Court has not

heretofore addressed the meaning of "consumed" as used in Rule 40.

Generally, courts must give great deference and weight to an agency's interpretation of its own rules. A strict standard of review applies in interpreting an administrative regulation, and the administrative interpretation becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation. See *Jackson Exp. v. Tenn. Public Service Comn.*, and authorities cited therein, 679 S.W.2d 942 (Tenn.1984).

The Commissioner, in support of his position, has cited *Midwestern Press, Inc. v. Commissioner of Taxation*, 295 Minn. 59, 203 N.W.2d 344 (1972). In that case, the Minnesota Supreme Court addressed whether a taxpayer's purchase of lithographic plates were exempt from the sales tax. Specifically, the Court examined the question of whether such plates were "used or consumed in ... industrial production of personal property intended to be sold ultimately at retail ..."

The Minnesota Supreme Court determined that the taxpayer's purchase of the lithographic plates were exempt from taxation. In affirming the decision of the Tax Court, the Court quoted from the earlier decision of the Tax Court as follows:

It is the opinion of this Court that the term "consumed" as used in our statute does not necessarily mean physical consumption but is broad enough to include economic consumption of the subject property. It is the opinion of this Court that the lithographic plates are "economically consumed" in the printing process, *having only junk value* at the end of their run. (emphasis supplied)

In commenting upon the foregoing opinion of the Tax Court, the Supreme Court said:

While the Tax Court coined the phrase "economic consumption," we are convinced that it was right in holding that these lithographic plates, which are manufactured and used only for the job for which they are prepared and *are worthless* after the job is completed, except in rare cases where there is a rerun, are,

for all practical purposes, consumed in completing the job. [Emphasis supplied].

Plaintiff points out correctly that the issue drawn in that case was not scrap value versus significant economic value. Rather, the state had argued unsuccessfully that the material in question was taxable as machinery, while the taxpayer argued that in fact the materials in question were only scrap or junk at the end of the manufacturing process, and thus were consumed. However, we are of the opinion that the Minnesota Supreme Court's general definition of consumed is of value in the instant case and supports the Commissioner's contention that "consumed" means that the material has been reduced to nothing more than scrap.

Taxpayer-appellee has cited and relies upon *American Distilling v. Dept. of Revenue*, 53 Ill.App.3d 42, 10 Ill.Dec. 946, 368 N.E.2d 541 (1977), *Hasbro Industries, Inc. v. Norberg*, 487 A.2d 124 (R.I.1985), and *Allied Textile Print. Corp. v. Director, Div. of Tax.*, 145 N.J.Super. 456, 368 A.2d 375 (1976).

*American Distilling* has a similar fact situation but is not helpful because of different legal issues. At issue in that case was a use tax on oak barrels used to age bourbon whiskey. It was shown that the barrels were not only used to store whiskey but the barrels provided flavor bodies and extracts from the wood which were ingredients of the final product, bourbon whiskey. After their use, they could be sold for other purposes but not reused to age whiskey. The court held that the barrels were by-products of the manufacturing process, their nature having changed by the aging process. Under an Illinois use tax statute construed strictly against the state, by-products produced by a manufacturing process and sold are deemed to have been originally purchased for resale and thus are not subject to taxation. The Illinois statute is not in any sense similar to the statute before us.

*Allied Textile Print. Corp.* is not helpful as the court in that case determined that the materials in question were machinery,

and not exempt as materials consumed in production.

We do not say that the plaintiff's theory of the meaning of "consumed" is unreasonable, however, none of the cases on which plaintiff relies directly address the taxation theory advanced by the Commissioner and none are inconsistent with the Commissioner's theory of the meaning of "consumed." In this case, it is clear that a material which has significant value can be recovered and rendered fit for use in the same manufacturing process and that being the case, we cannot say that the Commissioner's theory of the meaning of "consumed," that is, the residue of material must have been reduced to scrap of minimal value, is erroneous or inconsistent with Rule 40. Under such circumstances the Commissioner's interpretation becomes of controlling weight. *Jackson Exp. v. Tenn. Public Service Com'n, supra.*

The judgment of the trial court ordering a refund of the taxes assessed on the use of 5% palladium on alumina catalyst plus interest at the rate of 7.94% per annum from November 12, 1984, is reversed and that portion of plaintiff-appellee's case is dismissed. That portion of the judgment pertaining to refund of taxes on nickel catalyst and interest due on the amount paid under protest for taxes levied on nickel catalyst are unaffected as no issue has been raised on appeal as to that portion of the judgment.

Costs are taxed against plaintiff-appellee for which let execution issue, if necessary.

HARBISON, C.J., and COOPER, DROWOTA and O'BRIEN, JJ., concur.

OPINION ON PETITION TO REHEAR

Plaintiff-appellee, The Quaker Oats Company, has filed a petition to rehear which has been considered by the Court and found to be without merit.

The petition is denied. Costs are adjudged against plaintiff-appellee.