**AL–TOM INVESTMENT, INC., d/b/a Kentucky Fried Chicken, et al., Appellants,**

v.

**DIRECTOR OF REVENUE, Respondent.**

**No. 70829.**

Supreme Court of Missouri, En Banc.

Aug. 1, 1989.

Richard A. King, Robert J. Payne, Kansas City, Mo., for appellants.

William L. Webster, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

WELLIVER, Judge.

Appellants appeal the decision of the Administrative Hearing Commission, which held appellants liable for tax and interest for sales tax assessed by the Director on purchases of vegetable cooking oil. We have exclusive jurisdiction. Mo. Const. art. V, § 3. We reverse the decision of the Commissioner.

I.

Kentucky Fried Chicken of Spanish Lake, Inc., Al–Tom Investment, Inc., doing business as Kentucky Fried Chicken, and Scott Marshall Enterprises, Inc., (appellants), are corporations licensed to do business in Missouri and have their principal places of business in Missouri. For preparing the fried foods at their restaurants, mainly chicken, fish and potatoes, the appellants purchased vegetable cooking oil, and issued blanket exemption certificates to their vendors which allowed appellants to avoid paying sales taxes on their purchases of the oil. The Director audited appellants for the tax periods of November 1, 1983, through October 31, 1986, and assessed sales tax, interest, and additions to tax against appellants. The Director assessed unpaid sales tax and interest of $784.21 against Kentucky Fried Chicken of Spanish Lake, $584.65 against Al–Tom Investment, and $8,250.35 against Scott Marshall Enterprises. The appellants appealed and their appeals were consolidated before the Administrative Hearing Commission.[1]

The Director contended that only that part of the oil that was actually absorbed into the food product would qualify for the tax exemption. The Director assessed a sales tax on 50 percent of appellants' purchases of cooking oil in line with "the policy of the Department of Revenue", which considered only 50 percent of the oil to be absorbed into the final product.

1. Scott Marshall, Inc. filed two appeals, RS–87–0786 and RS–87–0876. Kentucky Fried Chicken of Spanish Lake, Inc. filed RS–87–0787, and Al–Tom Investment, Inc. filed RS–87–0788.

At the hearing, Allen Scott of Scott Marshall Enterprises, Inc., testified that his estimated rate of incorporation of oil into the food products was 82 percent. His estimate was based upon figures supplied by both his oil supplier and his renderer, as well as Kentucky Fried Chicken personnel who had determined when the oil in present use should be discarded in order to guarantee proper flavor and cooking qualities. Kentucky Fried Chicken personnel had determined that after the preparation of six thousand pounds of product the remaining oil had a fat content of approximately 50 percent, which made it unsatisfactory for preparing further product. The oil was discarded at this point.

Thomas J. Slater, Jr., of Kentucky Fried Chicken of Spanish Lake, Inc., and Al–Tom Investment, Inc., also testified that the 82 percent testified to by Allen Scott was similar to the overall absorption rate in his businesses.

The Director offered no evidence in any way contradicting or refuting the evidence offered by appellants, nor did the Director offer any evidence to support his imposition of a tax on 50 percent of the oil purchased by appellants.

The Commission determined that appellants had not satisfied their burden of proof as to the content of the oil that was absorbed into the foods and upheld the Director's assessment of the tax on 50 percent of the purchases of cooking oil, finding:

> petitioner presented no evidence as to how much cooking oil was absorbed into the fish and french fries. Petitioner's

evidence as to how much cooking oil was absorbed into chicken was based on hearsay, gross approximations and speculation. We find the evidence unpersuasive, inconclusive and incompetent. Petitioner did not establish that more than 50 percent of the cooking oil was absorbed. At 133.

The Commission's decision was based on *Blueside Companies, Inc. v. Director of Revenue*, 2 Mo. Tax. Rep. (CCH) Para. 200–973 (Mo. Admin. Hearing Comm., Oct. 5, 1984), *Leduc Packing Companies v. Director of Revenue*, 2 Mo. Tax. Rep. (CCH) Para. 200–720 (Mo.Admin.Hearing Comm. December 18, 1980), *Floyd Charcoal Company, Inc. v. Director of Revenue*, 599 S.W.2d 173 (Mo.1980), 12 CSR 10–3.292 [2], and 12 CSR 10–3.294 [3].

Following the Commission's decision, this appeal followed.

## II.

■ A decision of the Administrative Hearing Commission is to be upheld if it is authorized by law and supported by competent and substantial evidence upon the whole record, unless the result is clearly contrary to the reasonable expectations of the general assembly. *Becker Electric Company v. Director of Revenue*, 749 S.W.2d 403, 405 (Mo. banc 1988). Where the decision is based upon an interpretation or application of the law, this Court is not precluded from exercising its independent judgment. *Ceramo Company, Inc. v. Goldberg*, 650 S.W.2d 303, 304 (Mo.App. 1983).

**2.** 12 CSR 10–3.292 states, in part: (1) In order to be considered as ingredients or component parts of the new personal property resulting from manufacturing, or otherwise, the materials must be purchased by the manufacturer for the purpose of becoming a recognizable, essential and basic ingredient or component part of the new personal property which is to be ultimately sold for final use or consumption. Materials qualify for this exemption only to the extent that they become an ingredient or component part of the new personal property.

**3.** 12 CSR 10–3.294 states, in part: (1) Sellers of parts to manufacturers or other producers who sell component parts or substances or who

physically incorporate such property as an ingredient or constituent of other tangible personal property which they manufacture or otherwise produce and sell, are not subject to the sales tax. This exemption is applicable to the extent that such property or its reduced component substances are resold or incorporated into tangible personal property intended to be ultimately sold at retail for use or consumption. Property which is used or consumed in the manufacturing or other production process, but not physically incorporated into tangible personal property for ultimate retail sales as a product which the producer or manufacturer produces or sells, is subject to the sales tax.

### III.

■ The law that exists on the subject is found in two Court of appeals decisions, *Ceramo* and *ASARCO, Inc. v. McNeill,* 750 S.W.2d 122 (Mo.App.1988), and in the line of Administrative Hearing Commission opinions, *Blueside Companies,* and *LeDuc Packing Companies,* relied on by the Commission in this case. Department of Revenue Regulations 12 CSR 10–3.292 and 12 CSR 10–3.294 [4] are based on the line of administrative decisions, particularly *Blueside Companies.*

In the *ASARCO* case the Director argued to the court of appeals that "since 1977, the law regarding the component part or ingredient exemption [of § 144.030.2(2) ] has not been settled." *ASARCO, supra,* at 130. The Court stated:

> We therefore dismiss the Director's contention that an arguable question of law regarding § 144.030.2(2) exists by reason of the alleged 1984 decision of the Administrative Hearing Commission and the cases allegedly pending before it.

*Id.*

The Court continued by saying the only change in the law since 1977 "is the change in the review procedure". *Id.*

The 1984 Administrative Hearing Commission opinion that the Director alluded to was the *Blueside Companies* opinion. The case involved all of the chemicals utilized in the process of tanning leather. The Commission held that if the products were not detectable in the finished product, they were fully taxable, and that if they were detectable in the finished product, they were exempted only to the extent that the taxpayer could prove that they physically existed (and could be measured) in the finished product. The cause was remanded to the Director and no further appeal was later made. *Blueside Companies* cited and relied on the Commission's *Leduc Packing Companies* opinion rendered in 1980 and dealing with casings for meat products such as bologna and frankfurters. The Commission there had held that the dye contained in the casings was eligible for exemption, but that on the record there

was no showing of how much of the dye was retained in the finished product.

The "50 percent policy" of the Director referred to by the Commission in the findings of fact herein apparently harks back to a 1985 unappealed Commission opinion in *Hardee's of Springfield, Inc. v. Director of Revenue,* 2 Mo.Tax Rep. (CCH) Para. 200–987 (Admin.Hearing Comm., June 11, 1989), where a 50 percent exemption was allowed.

In *Ceramo,* in 1983, our Court of Appeals, Eastern District, held that the fuel oil mixed with clay to give it a shiny finish after baking constituted a component part or an ingredient of the final product. The court of appeals believed this to be true even though little if any of the fuel oil remained after the cooking process was completed, saying:

> [t]he fact that the fuel oil was consumed in the process is irrelevant because it was initially a "component part or ingredient" of the final product and was necessary to produce a high quality product.

*Ceramo, supra,* at 305.

Our Court declined transfer thereby permitting the court of appeals opinion to stand.

Our southern district spoke on the subject in 1988 in the *ASARCO* opinion. This case was postured in a somewhat unusual manner. In 1977 Asarco and others filed suit against the Director of Revenue to construe the component part exemption section as exempting from sales and use tax all of the:

> [m]aterials ... which when used in manufacturing, processing, compounding, mining, producing or fabricating become a component part or ingredient of the new personal property resulting from such manufacturing, processing, compounding, mining, producing or fabricating and which new personal property is intended to be sold ultimately for final use and consumption.

*ASARCO, supra,* at 123.

Asarco also sought to have declared invalid the Director of Revenue's Regula-

---

**4.** *See* notes 2 and 3, *supra.*

tions 030–23, (or 10–3.292), dealing with reagents. The Court entered its judgment exempting all materials and held the regulation to be in excess of the exemptions provided by the statute and enjoined its enforcement. There was no appeal from the circuit court opinion and the Director made no assessments until 1987, at which time the Director again assessed the same materials. Asarco raised the defenses of res judicata and collateral estoppel.

The circuit court entered the following order:

The Court finds Defendants have not shown good cause why the Court should not enforce its 1977 Declaratory Judgment which found the ...Department of Revenue's Rule (12 CSR 10–3.292) that attempts to tax reagents used by [plaintiff] in its West Fork operations ...violates Missouri Statutes ...and further found that the following named reagents, to-wit: [here the order lists over 20 substances by name] in [its] mining, milling, smelting and refining processes, were exempt from Missouri Sales and Use Taxes under ...Chapter 144 Revised Statutes of Missouri.

WHEREFORE, the Court does hereby overrule the Defendant's Motion to Dismiss and does further enjoin and prohibit the ...Director ...and the ...Department ...from assessing and collecting Missouri Sales and Use Taxes, interest, and penalties, on the reagents described in this Court's ...1977 [judgment], which [plaintiff] uses in its West Fork operation ...and on which said reagents the Defendants have proposed to assess Sales and Use Taxes, plus interest and penal-

ties ...covering the period ...from 1984 to the present time.

*Id.* at 126, 127.

The Director appealed. The southern district affirmed the circuit court judgment saying:

Nothing in *Ceramo* suggests that § 144.030.3(1)—now § 144.030.2(2), RSMo 1986—has, since the 1977 judgment in the instant case, been interpreted or applied in a manner inconsistent with the 1977 judgment. On the contrary, Ceramo reinforces the 1977 judgment.

*Id.* at 130.

We again declined to transfer, permitting the court of appeals opinion to stand.

While the two court of appeals opinions have no binding effect on our Court, we have examined the rulings of our sister states, and we find the two opinions to be totally compatible with what we believe to be the better reasoned rule. States such as Alabama, Georgia, Nebraska, New York, Texas, and Washington follow the rule that if any part of a material is intended to and does remain as an essential or necessary element of the finished product then the entire purchase is exempt. This includes the material that is used or consumed in the manufacturing process.[5] The other rule, followed in states such as Arkansas, California, Illinois, Maryland, Ohio, Tennessee, Colorado, and found in 12 CSR 10–3.-292 and 12 CSR 10–3.294 as the official policy of the Director, is that materials are exempt only to the extent that the taxpayer can prove that they are physically incorporated into the finished product.[6] This rule requires measurement of the pro rata part of each material remaining in the final product.

---

5. *See, State v. Southern Kraft Corporation,* 243 Ala. 223, 8 So.2d 886 (1942); *Boswell v. General Oils, Inc.,* 368 So.2d 27 (Ala.Cir.App.1978); *Ex parte Disco Aluminum Products Co., Inc.,* 455 So.2d 849 (Ala.1984); *Blackmon v. Atlantic Steel Company,* 130 Ga.App. 492, 203 S.E.2d 710 (1973); *Nucor Steel v. Herrington,* 212 Neb. 310, 322 N.W.2d 647 (1982); *Finch, Pruyn & Co., Inc. v. Tully,* 69 A.D.2d 192, 419 N.Y.S.2d 232 (1979); *Bullock v. Lone Star Industries, Inc.,* 584 S.W.2d 386 (Tex.Civ.App.1979); *Lone Star Industries, Inc. v. State Director of Revenue,* 97 Wash.2d 630, 647 P.2d 1013 (1982) (en banc).

6. *See, Hervey v. International Paper Co.,* 252 Ark. 913, 483 S.W.2d 199 (1972); *Kaiser Steel Corp. v. State Board of Equalization,* 24 Cal.3d 188, 593 P.2d 864, 154 Cal.Rptr. 919 (1979); *Brennan Cattle Company v. Jones,* 41 Ill.2d 260, 242 N.E.2d 192 (1968); *Merchant's Cold Storage Co. v. Glander,* 150 Ohio St. 524, 83 N.E.2d 197 (1948); *Kingsport Publishing Corporation v. Olsen,* 667 S.W.2d 745 (Tenn.1984); *Quaker Oats Co. v. Jackson,* 745 S.W.2d 269 (Tenn.1988); *Gold Star Sausage Co. v. Kempf,* 679 P.2d 1116 (Colo.App.1984).

We do not believe that the legislature either intended or believed that the Director should or could go into the field and make such measurements and computations. In the establishments herein, the cooking oil would be but the first step. Only a portion of the flour and spices end up in the final product. Only a portion of the potatoes end up as finished product. Chicken trimmings are consigned to the garbage. The same is true for the component parts of the salad. Accurately measuring the amount of material physically remaining in the final product is neither feasible nor possible. Our court of appeals in *Ceramo* and *ASARCO* have followed and applied the appropriate rule and have reached the result we believe intended by the legislature.

The decision of the Administrative Hearing Commission is reversed. To the extent that they are contrary to this opinion, neither the Administrative Hearing Commission's opinions nor Regulations of the Director of Revenue based thereon shall be followed.

All concur.