The DOE RUN RESOURCE COMPANY, d/b/a Doe Run Company Smelting Division, et al., Respondents,

v.

DIRECTOR OF REVENUE, Appellant.

No. 80403.

Supreme Court of Missouri, En Banc.

Dec. 22, 1998.

Rehearing Overruled Jan. 19, 1999.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Appellant.

J. Kent Lowry, Sherry L. Doctorian, Jefferson City, for Respondents.

WILLIAM RAY PRICE, Jr., Judge.

The Director of Revenue (DOR) appeals from a decision of the Administrative Hearing Commission (AHC) exempting Doe Run's out-of-state purchases of coke from Missouri's use tax. Because this appeal involves the construction of a Missouri revenue law, we have jurisdiction. *Mo. Const. art. V, section 3.* We hold that the coke purchases are subject to Missouri's use tax because the coke is entirely consumed in the process and Doe Run does not intend for the coke to remain in the finished product.

### I.

"A decision of the AHC is to be upheld if it is authorized by law and supported by competent and substantial evidence upon the whole record, unless the result is clearly contrary to the reasonable expectations of the general assembly." *Al–Tom Investment, Inc. v. Director of Revenue,* 774 S.W.2d 131, 132 (Mo. banc 1989). Where, as here, the AHC's decision is based upon an interpretation of the law, we are not precluded from exercising our independent judgment. *Al–Tom,* 774 S.W.2d at 132.

### II.

Doe Run is a corporation that mines and processes lead in southeastern Missouri. An essential ingredient in processing lead is coke, a substance that is 90–95 percent pure carbon. During the taxable period in question, Doe Run purchased coke from out-of-state vendors. Beginning with the first quarter of 1996, and continuing to date, Doe Run began to pay use tax on its purchases of coke under protest, claiming that the purchases were exempt under the component-

part exemption of section 144.030.2(2).[1] In 1996, Doe Run made use tax payments on coke purchases totaling $235,635.07.

To produce lead, Doe Run removes lead sulfide from the ground and crushes it to form a powder called "lead concentrate." The lead concentrate is mixed with crushed coke and various other minerals and is then set on fire, burning the sulfur out of the lead concentrate. Lead oxide remains, which is called "sinter."

Next, the oxygen is removed from the sinter to produce molten lead. Specific quantities of sinter and coke are mixed to create a substance called the "charge." The charge is placed in the top of a blast furnace. As the charge is heated and moves down the furnace, chemical reactions occur. In the final reaction, the carbon atoms from the coke bond with the oxygen atoms in the sinter to form carbon dioxide. The carbon dioxide escapes from the mixture as a waste gas. The resulting substance is molten lead, approximately 97 percent pure. Small amounts of waste metals such as copper and nickel are then skimmed off the molten lead. After this is completed, the resulting product is 99.99 percent pure lead. Doe Run's goal in its processing is to remove all impurities from the mined material. Their customers require that the lead be as pure as possible to be commercially useful.

### III.

■ Missouri has adopted a system of taxation of tangible personal property focused upon sales "at retail." Sales that occur within Missouri are subject to a sales tax. *Section 144.020*. Out-of-state purchases are subject to a compensating use tax. *Section 144.610*. Both the sales and use tax statutes contain exclusions and exemptions that eliminate taxation if the property is ultimately resold for final use or consumption. These exclusions and exemptions avoid multiple taxation of the same property as it passes through the chain of commerce from the producer to wholesaler to distributor to retailer.

Doe Run's operation constitutes "mining" and "processing" and Doe Run's final product is "intended to be sold ultimately for final use or consumption." Doe Run purchased its coke from out-of-state suppliers; therefore, the use tax is at issue. The question before the Court is whether the coke became a "component part or ingredient" of the lead.

Doe Run cites *Ceramo Co., Inc. v. Goldberg*, 650 S.W.2d 303, 304–05 (Mo.App. 1983), to support its assertion that the coke should be exempt from the use tax. In *Ceramo*, the court of appeals held that fuel oil, mixed with clay during the manufacturing process to give clay pots a shiny finish, was exempt under section 144.030.2(2) even though only traces of the fuel oil remained in the finished product. The court of appeals stated that the question of whether "the fuel oil was consumed in the process is irrelevant" to a determination of the applicability of the component-part exemption, "because [the fuel oil] was initially a 'component part or ingredient' of the final product and was necessary to produce a high quality product." *Ceramo*, 650 S.W.2d at 305.

We have cited *Ceramo* favorably in two recent cases. In *Al–Tom Inv., Inc. v. Director of Revenue*, 774 S.W.2d 131, 134 (Mo. banc 1989), we held that the purchase of oil used to fry chicken was exempt under section 144.030.2(2) because a portion of the oil remained as an element of the finished product. The rule enunciated in *Al–Tom* was: "If any part of a material is intended to and does remain as an essential or necessary element of the finished product then the entire purchase is exempt. This includes the material that is used or consumed in the manufacturing process." In *Al–Tom*, we recognized that the *Ceramo* court found that the fuel oil was a component part of the clay pots "even though little if any of the fuel oil remained

---

1. This provision provides an exemption for Materials ... which when used in manufacturing, processing, compounding, mining, ... *become a component part or ingredient of the new personal property* resulting from such manufacturing, processing, compounding, mining, ...

and which new personal property is intended to be sold ultimately for final use or consumption;
(emphasis added). All statutory references are to RSMo 1994 unless otherwise noted.

272

after the cooking process...." *Al–Tom*, 774 S.W.2d at 133.

In *Sipco, Inc. v. Director of Revenue*, 875 S.W.2d 539, 543 (Mo. banc 1994), we considered the use of natural gas in a singer to remove hair from hog carcasses before butchering. We held that Sipco's purchases of natural gas from out-of-state suppliers were not exempt from the use tax. We noted that the natural gas singer acted on the hog carcass externally to remove hair and that "[n]o part of the natural gas used in Sipco's singer remained as an essential or necessary element of the finished pork product." *Sipco*, 875 S.W.2d at 543. In *Sipco*, we noted that *Ceramo* correctly exempted the fuel oil purchases because the fuel oil left a shiny finish on the clay pots and, therefore, became a component part of the final product. *Sipco*, 875 S.W.2d at 542.

■ Neither *Sipco* nor *Al–Tom*, however, should be read to affirm language in *Ceramo* that reaches beyond the facts of that case. The broad language in *Ceramo* glazes over the statutory requirement that the material in question become a "component part or ingredient of the new personal property." The exemption clearly indicates that it does not apply to materials that are totally consumed and are not intended to and do not become a part of the final retail product. Whether the material in question is intended to remain in the finished product, even in trace amounts, is indeed determinative of whether that material falls under the exemption.

The present case is more analogous to the facts in *Sipco* than to the facts in *Al–Tom* and *Ceramo*. Here Doe Run attempts to create a product that is as close to pure lead as possible, with no coke or other materials remaining in the final product. The purpose of the coke is to bond with the oxygen in the sinter and then to *completely dissipate* as carbon dioxide. Although the coke is an essential ingredient in the process, it is not intended that it "become a component part or ingredient of" the product. Under the express terms of the statute, it cannot qualify for the exemption.

2. RSMo Supp.1997.

It is noteworthy that the Missouri legislature amended the component-part exemption in 1996. The legislature added language to section 144.030.2(2)[2] to explicitly exempt certain materials that are completely consumed during the processing of steel products. This amendment sheds light on the intended scope of the component-part exemption. It appears that it is the intention of the legislature only to exempt

materials, ... *which are ultimately consumed in the manufacturing process by blending, reacting or interacting with* or by becoming, in whole or in part, component parts or ingredients *of steel products* intended to be sold ultimately for final use or consumption;

(emphasis added).

If the legislature had intended the original exemption to include substances that are consumed in the manufacturing process of any other product, it could have said so. No specific exemption is stated for lead products.

## CONCLUSION

The decision of the AHC is reversed. The DOR's assessment of use tax on Doe Run's purchases of coke beginning with the first quarter of 1996 to date were proper. The case is remanded to the AHC for further proceedings consistent with this opinion.

All concur.