**SIPCO, INC., d/b/a Monfort Pork, Appellant,**

v.

**DIRECTOR OF REVENUE, State of Missouri, Respondent.**

No. 76165.

Supreme Court of Missouri, En Banc.

April 26, 1994.

**540**

John P. Barrie, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gretchen Garrison, Atty. Gen., Jefferson City, for respondent.

PRICE, Judge.

Sipco, Inc. appeals from a decision of the Administrative Hearing Commission (AHC), upholding assessments of Missouri use tax, additions to tax, and interest issued by the Director of Revenue (Director) for the taxable period beginning September 1, 1988, and ending June 30, 1991. The questions before the Court are: whether use tax may be assessed against Sipco's purchases of dry ice to preserve pork products during delivery to customers; whether use tax may be assessed against Sipco's purchases of natural gas used to singe the hair off hog carcasses during processing; and whether Sipco was willfully negligent in failing to pay use tax. We hold that the dry ice purchases are exempt from use tax as purchases for resale; the natural gas purchases are subject to use tax because the gas did not become a component part or ingredient of new manufactured property; and certain of the penalties and additions assessed against Sipco are set aside.

I.

Sipco is a corporation in the business of butchering hogs. During the taxable period, Sipco used various methods to package the resulting pork products. In order to comply with United States Department of Agriculture (USDA) regulations and to maintain wholesomeness during delivery as required by its customers, Sipco used dry ice in packaging its fresh pork products.

Sipco's product prices depended upon the type of product being sold and the type of packaging. In determining the base price for any given pork product, Sipco used the USDA daily market quotes. A premium was added to cover the cost of more expensive packing techniques such as cry-o-vac vacuum sealing or gas flushing when requested by customers. No specific determination was made to indicate the cost of dry ice in relation to the total product cost.

The butchering process involved use of a natural gas fired singer. The hog carcasses were passed through a singer box where they were enveloped in natural gas flames that loosened or removed hair.

During the taxable period, Sipco purchased the dry ice and natural gas from out-of-state vendors and paid no Missouri sales or use tax on the purchases. The Director assessed use tax of $2,367.08 on the dry ice purchases and $4,833.32 on the natural gas purchases. Sipco contests the assessment of use tax on these purchases, except for 50% of the natural gas. Subsequent to the hearing before the AHC, Sipco stipulated that amount of natural gas was used outside of the singer.

## II.

Missouri has adopted a system of taxation of tangible personal property focused upon sales "at retail". Sales that occur within the State of Missouri are subject to a sales tax. § 144.020.[1] Out of state purchases are subject to a compensating use tax. § 144.610. Both the sales and use tax statutes contain exclusions and exemptions that eliminate taxation of the sale or use of property which is to be resold. § 144.010(8); § 144.605(10); § 144.615(6). These sections avoid multiple taxation of the same property as it passes through the chain of commerce from producer to wholesaler to distributor to retailer.

In the present case, Sipco purchased its dry ice out of state and the use tax is at issue. Sipco argues that its purchases of the dry ice are not subject to the use tax because the ice was held for resale. Section 144.615(6) exempts from use tax "[t]angible personal property held by processors, retailers, importers, manufacturers, wholesalers, or jobbers solely for resale in the regular course of business."[2] For present purposes:

> The definition of resale in this section is interchangeable with the definition of 'sale' found in section 144.605(5).

*King v. National Supermarkets, Inc.,* 653 S.W.2d 220, 221 (Mo. banc 1983) (citing *Smith Beverage Co. v. Reiss,* 568 S.W.2d 61, 64 (Mo. banc 1978)). A "sale" is defined as:

> [A]ny transfer, barter or exchange of the title or ownership of tangible personal property, or the right to use, store or consume the same, for a consideration paid or to be paid ...

§ 144.605(5).

It is clear from the record that dry ice is tangible personal property that Sipco transferred to its customers in boxes of fresh pork products. The Director contends, nevertheless, that the dry ice transfers were not "sales," because no consideration flowed from the customers to Sipco as required by § 144.605(5).[3] The Director's argument is based upon two decisions of this Court that, although consistent on their facts, contain somewhat inconsistent dicta.

In *King v. National Super Markets, Inc.,* 653 S.W.2d 220 (Mo. banc 1983), we held that a grocery store's purchases of grocery bags were not subject to use tax, because the bags were "sold" by the store to customers in the regular course of business. Although customers were not charged independently for the bags each time they bought groceries, the store introduced evidence that the cost of the bags was factored into the overall price customers paid for groceries. Evidence showed that the charge for bags amounted to approximately .35 percent of the total price customers paid for groceries. *Id.* at 221. *See also Smith Beverage Co. of Columbia v. Reiss,* 568 S.W.2d 61 (Mo. banc 1978) (holding purchase of bottles by a soft drink bottler exempt from use tax, because bottler sold bottles containing its product to customers).

On the other hand, in *House of Lloyd v. Director of Revenue,* 824 S.W.2d 914 (Mo. banc 1992), the Court imposed a use tax upon strapping material and styrofoam packing peanuts used in the packing process. *House of Lloyd* primarily determined that the packing process was not "fabrication" and thus not exempt from use tax under § 144.030.2(5). The Court also briefly noted, however,

---

1. All statutory references are to RSMo 1986.

2. Missouri's use tax is set forth in § 144.610.1. The statute provides:

> A tax is imposed for the privilege of storing, using or consuming within this state any article of tangible personal property purchased on or after the effective date of sections 144.600 to 144.745 in an amount equivalent to the percentage imposed on the sales price in the sales tax law in section 144.020....

3. Of course, any dry ice consumed in processing would not be held "solely for resale". § 144.615(6).

that these items were not exempt from use tax as goods held for sale because there was no evidence that a separate charge was assessed for the items or that a charge was factored into the price of the merchandise. *House of Lloyd,* 824 S.W.2d at 920. In fact, House of Lloyd's vice president and controller testified that the items were not sold to anybody but were used "entirely by the House of Lloyd." *Id.*

To the extent that *National Super Markets* and *House of Lloyd* imply that the holder of goods must show a calculated cost specifically factored into the price for resale to take advantage of the resale exemption, they are misleading and should no longer be followed. Neither § 144.615(6) nor § 144.605(5) require such a specific allocation. Instead, § 144.605(5) merely directs our attention to whether there was: (1) a transfer, barter or exchange; (2) of the title or ownership of tangible personal property or the right to use, store or consume the same; (3) for a consideration paid or to be paid. The statute indicates the elements that are controlling.

█ The record before us establishes that Sipco packed its pork products in dry ice for shipping to its purchaser. Sipco neither retained the dry ice, nor consumed it for purposes other than to transfer it to the customer.[4] The purchaser received the dry ice along with the pork and was free to use or discard the dry ice as it saw fit. While there was no extra or explicitly stated charge for the dry ice, one need not be an accountant to understand that the value of the dry ice was factored directly or indirectly into the total consideration paid for the pork. Accordingly, the dry ice that Sipco purchased for transfer to its customers and that was used for that purpose[5] is exempt from use tax as property held for resale.[6] This is so regard-less of whether the consideration received by Sipco is specifically allocated between the pork and the dry ice or is stated simply as a total price for the product as received. The decision of the AHC is reversed as to the assessment of use tax against Sipco's purchases of dry ice.

### III.

Next, we consider whether the natural gas used in Sipco's gas fired singer became a component part or ingredient of new manufactured property and was therefore exempt from use tax under §§ 144.030.2(2) and 144.615(3). Sipco's processing of live hogs into marketable pork products constituted manufacturing. *See Wilson and Co., Inc. v. Department of Revenue,* 531 S.W.2d 752 (Mo. 1976). It is also true that Sipco's products were "intended to be sold ultimately for final use or consumption" as required by § 144.030.2(2). Nevertheless, the natural gas never became a "component part or ingredient" of the processed pork product.

In an attempt to argue that the natural gas did become a component part or ingredient of its products Sipco cites *Ceramo Co., Inc. v. Goldberg,* 650 S.W.2d 303 (Mo.App.1983). In *Ceramo,* the court of appeals held that fuel oil, mixed with clay during the manufacturing process to give clay pots a shiny finish, was exempt under § 144.030.2(2), even though none of the fuel oil remained in the finished product. *Ceramo,* 650 S.W.2d at 304. Unlike the oil in *Ceramo,* which was mixed in and became an ingredient of the product during manufacturing, the natural gas used by Sipco acted on the hog carcass externally to remove hair. The natural gas was no more an ingredient or component part of the hog carcass than would have been a razor blade had Sipco chosen to shave off the hair.

---

**4.** The Administrative Hearing Commission found that in certain shipments the dry ice melted prior to delivery. This fact does not alter the general substance of the transaction. The ice was still intended to be transferred to the customer as packaging of the product.

**5.** Sipco submitted a copy of a USDA publication effective November 1, 1992, titled, *Institutional Meat Purchase Specifications—General Requirements.* In order for fresh meat products to meet USDA specifications, the publication states: "The use of dry ice or other USDA, FSIS approved food refrigerants (except $H_2O$ ice) shall be permitted to maintain these temperatures [28 to 40 degrees Fahrenheit]." I.M.P.S., General Requirements, p. 2.

**6.** All the assessments in this case are for consumer use tax. No opinion is necessary, nor expressed, on other tax liability under chapter 144 RSMo.

Furthermore, this Court has addressed this question since *Ceramo.* In *Al-Tom Inv., Inc. v. Director of Revenue,* 774 S.W.2d 131 (Mo. banc 1989), we held that the purchase of oil used to fry chicken was exempt under § 144.030.2(2) because a portion of the oil remained as an element of the finished product. The rule enunciated in *Al-Tom* was: "[I]f any part of a material is intended to and does remain as an essential or necessary element of the finished product then the entire purchase is exempt. This includes the material that is used or consumed in the manufacturing process." *Al-Tom,* 774 S.W.2d at 134. No part of the natural gas used in Sipco's singer remained as an essential or necessary element of the finished pork product. Accordingly, Sipco's purchases of ·natural gas are not exempt from use tax under §§ 144.030.2(2) and 144.-615(3).

## IV.

Finally, we turn to the AHC's imposition of a penalty against Sipco for not timely paying the use taxes at issue. Because Sipco prevailed regarding the exempt status of dry ice actually transferred to its customers, any penalty with respect to those taxes must fall.[7] We must determine, though, if penalties were properly assessed against Sipco's failure to pay use tax on its natural gas purchases.

Section 144.665.2 provides a five percent penalty for a failure to pay timely any tax "unless it is shown that such failure is due to reasonable cause and not the result of willful neglect, evasion, or fraudulent intent." This Court has recently held that the taxpayer need only establish that its conduct was not characterized by "willful neglect." *Hewitt Well Drilling & Pump Service, Inc. v. Director of Revenue,* 847 S.W.2d 795, 799 (Mo. banc 1993). In this regard, "evidence that the taxpayer believed that no tax was due is inconsistent with a conclusion of willfulness." *Id.* (quoting *Bridge Data Co. v. Director of Revenue,* 794 S.W.2d 204, 208 (Mo. banc 1990)).

Sipco and the director agreed to a stipulation on March 10, 1993, that 50% of the natural gas bought was for use in the singer and that 50% of the gas was used for other purposes at the plant. As Sipco has presented no evidence of justification for not paying tax on the gas used outside the singer, the assessment of penalties on this portion of the gas purchased was proper. However, Sipco's arguments regarding the natural gas used in the singer were reasonable, even though Sipco did not prevail. Accordingly, it was error to assess penalties against Sipco on the 50% of purchases of natural gas to be used in the singer.

## CONCLUSION

The assessment of use tax on Sipco's out of state purchases of dry ice is reversed. The assessment of use tax on Sipco's out of state purchases of natural gas is affirmed. The assessment of penalties is affirmed as to 50% of the natural gas and reversed as to the remaining 50% that Sipco believed in good faith to be exempt. The case is remanded to the Administrative Hearing Commission for further proceedings consistent with this opinion.

All concur.

---

7. The record is not sufficiently clear nor has the AHC made findings that would allow us to determine whether any penalty would be appropriate upon dry ice that was not actually transferred.