**PRESIDENT CASINO, INC., Trustee of the Distribution Trust, Appellant/Cross–Respondent,**

v.

**DIRECTOR OF REVENUE, Respondent/Cross– Appellant.**

No. SC 87722.

Supreme Court of Missouri, En Banc.

April 17, 2007.

James W. Erwin, Janette M. Lohman, Thompson Coburn LLP, St. Louis, for Appellant/ Cross-Respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., James L. Spradlin, Jefferson City, for Respondent/Cross-Appellant.

LAURA DENVIR STITH, Judge.

President Riverboat Casino–Missouri, Inc. ("President")[1] seeks review of the portion of a decision of the Administrative Hearing Commission ("AHC") that denied President's claim for a refund of use tax it paid on certain gaming equipment. The Director of Revenue ("Director") seeks review of the remaining portion of the AHC's decision, which granted President's claim for a refund of sales and use taxes President paid on its purchases of certain food and drink under the "resale" exemption even though President provided the food and drink to customers on a complimentary basis.

This Court affirms the AHC's holding that President is not entitled to a refund of the use tax it paid on gaming equipment. The gaming tax is not the functional equivalent of the sales tax, and President is not entitled to claim the tax exemptions that Missouri law applies to sales and use taxes. The gaming tax is a separate tax the legislature imposes on adjusted gross re-

1. After argument, upon President's motion, this Court substituted President Riverboat Casino–Missouri, Inc. with President Casino, Inc., the trustee of the distribution trust to which the rights to any tax refunds at issue in this case were transferred under a Chapter 11 reorganization plan. Petitioner/cross-respondent is referred to as "President" throughout.

ceipts of certain gaming activities, not on sales or purchases. Accordingly, the Director properly required President to pay both the use tax on its out-of-state purchases of gaming equipment and the gaming tax on its adjusted gross receipts from use of the gaming equipment in its facilities.

This Court reverses the AHC's holding that President is entitled to a refund of sales and use taxes paid on its purchases of food and drink used to provide complimentary meals to certain of its customers under the resale exemption from sales and use tax. To be entitled to the resale exemption, the taxpayer must resell the item purchased or incorporate its value into other items it resold. The record shows that President did not factor the cost of these complimentary meals into the price of meals it sold, but rather factored their cost into the "payout" of its slot machines. As this payout is subject to the gaming tax, not the sales or use tax, the resale exemption does not apply. The AHC's decision is affirmed in part and reversed in part, and the case is remanded.

## I. FACTUAL & PROCEDURAL BACKGROUND

### A. President's Gambling Boat Operation.

President is a licensed gambling excursion boat that operates slot machines and gaming tables. President also has a restaurant and a deli on its premises. President rewards its customers with certain benefits based on their amount of play at President's machines and tables. For example, customers who bet $90,000 in one year are entitled to two complimentary buffet meals at President's restaurant and two complimentary deli meals. President also sends coupons for benefits such as

free meals to certain customers based on the amount of their play.

Missouri law mandates that President and other casinos pay out at least 80% of all wagers placed. Sec. 313.805(12), RSMo 2000.[2] President's slot machines have an average payout of 93.446%. When determining the rate at which to set its slot machines' payout, President considers all of its operating costs, including the cost of the complimentary meals provided to its customers, which President refers to as "comps."

### B. Gaming Tax Payments.

Like all other Missouri excursion gambling boats, President is required to pay a tax "on the adjusted gross receipts received from gambling games ... at a rate of twenty percent." Sec. 313.822. Adjusted gross receipts are the difference between "the total sums wagered" and the "winnings paid to wagerers." Sec. 313.800(1), (15), RSMo Supp.2006. Accordingly, President pays a tax on the amount its customers lose while gambling or, stated another way, on the amount President wins from its customers.

### C. Sales and Use Tax Payments and Refund Claims.

Additionally, like other companies doing business in Missouri, President is subject to sales tax and use tax. These two types of taxes are part of a system of taxation of tangible personal property that focuses on sales "at retail." *Sipco, Inc. v. Dir. of Revenue*, 875 S.W.2d 539, 541 (Mo. banc 1994). Retail sales that occur within Missouri are subject to a sales tax under section 144.020, RSMo Supp.2006, which imposes a tax "upon all sellers for the privilege of engaging in the business of selling tangible personal property ... at retail in this state." Out-of-state purchases are subject to a compensating use

**2.** All subsequent statutory citations are to RSMo 2000 unless otherwise indicated.

tax under section 144.610, which imposes a tax "for the privilege of storing, using or consuming within this state any article of tangible personal property." During the period in question, President collected and paid *sales* tax on the meals it sold to customers at its restaurant and deli. Sec. 144.020, RSMo Supp.2006. It paid *use* tax on the "comps" it provided to special customers. Additionally, President paid use tax on slot machines and other gaming equipment it purchased from out-of-state vendors. Sec. 144.610.

In 1998, the Director began an audit of President's sales and use tax returns for the years 1995 through 2002. In 2001,[3] the auditor discovered two problems related to the tax reported on "comps." First, President erred in paying use tax on the food and drink purchased for these "comps;" it should have paid sales tax because the food and drink were purchased within Missouri. Second, President had erroneously computed the use tax at the higher rate of tax applicable to non-food purchases.

After receiving the results of the audit, President filed a refund claim for the use tax it paid on its "comps" purchases for the period from January 1998 to September 2000. After the auditor offset the use tax President had incorrectly paid against the sales tax that it should have paid and applied the correct lower rate of tax, President received a $115,547.33 refund.

Later, President filed claims for refund of all sales and use taxes it paid on the food purchased for "comps" for the period from January 1995 to February 2003. It noted that both the sales tax and use tax statutes contain exclusions and exemptions that eliminate taxation of the sale or use of property that is to be resold (collectively the "resale exemption"). Sec. 144.010.1(10), RSMo Supp.2006 (sales tax resale exclusion); sec. 144.615(6), RSMo Supp.2006 (use tax resale exemption). "These sections avoid multiple taxation of the same property as it passes through the chain of commerce from producer to wholesaler to distributor to retailer." *Sipco*, 875 S.W.2d at 541. President argued that this resale exemption applied to the food it provided on a complimentary basis to certain customers, and so it should not have paid either sales tax or use tax of any amount on these purchases.

At around the same time, President filed two refund claims for use tax it had paid on its purchases of gaming equipment[4] from out-of-state vendors for the periods from January 1995 to December 1997 and January 2000 to December 2002. President claimed that these purchases qualified for the use tax resale exemption. *See* sec. 144.615(6), RSMo Supp.2006. Additionally, President claimed that an exemption afforded to coin-operated amusement businesses applied to its purchases of slot machines. *See* sec. 144.518, RSMo Supp. 2006.

### D. Director's Denial of Claims and Administrative Review.

In July 2003, the auditor denied the merits of President's claim that it should have paid no use tax on its purchase of gaming equipment for the periods January 1995 through December 1997 and January 2000 through December 2002. The auditor also denied President's claim that it owed no sales or use tax at all on "comps"

---

**3.** President and the Director executed agreements whereby President waived the limitations period for the assessment of sales tax and use tax to enable the Director to complete the audit. Thus, the Director was not time barred from completing the audit.

**4.** President describes this equipment as "slot machines, gaming tables and related equipment."

for the period from January 1995 through February 2003. As with the tax period from January 1998 to September 2000, however, the auditor found that President had erroneously paid use tax rather than sales tax for the period from January 1995 through December 1997, and again, the auditor allowed an offset of these taxes.[5] The Director issued final decisions affirming the conclusions of the auditor, and President sought review by the AHC. *See* sec. 621.050.1.

After a hearing on President's claims, the AHC agreed with the Director that President was not entitled to a refund on the use tax it had paid on its purchases of gaming equipment. In so doing, the AHC rejected President's argument that the gaming tax incorporated the substantive provisions of the sales tax law, including exclusions and exemptions applicable to sales tax and use tax. But the AHC held that President was entitled to a refund of the tax it paid on purchases of food and drink used as "comps" because it "resold" these purchases when it collected sales tax on meals sold to customers.[6]

President and the Director sought judicial review of those portions of the AHC decision with which they disagreed. *See* sec. 621.189, RSMo Supp.2006. Because their claims involve construction of Missouri's revenue laws, this Court has exclusive appellate jurisdiction. Mo. Const. art. V, sec. 3.

## II. STANDARD OF REVIEW

This Court conducts *de novo* review of the AHC's interpretation of revenue laws and will uphold the AHC's decision if it is "authorized by law and supported by competent and substantial evidence upon the whole record." *Six Flags Theme Parks, Inc. v. Director of Revenue*, 179 S.W.3d 266, 268 (Mo. banc 2005); sec. 621.193. Taxing statutes are to be strictly construed in favor of the taxpayer and against the taxing authority. *ACME Royalty Co. v. Dir. of Revenue*, 96 S.W.3d 72, 74 (Mo. banc 2002). The opposite is true of tax exemptions; they "are to be strictly construed against the taxpayer, and any doubt is resolved in favor of application of the tax." *Southwestern Bell Telephone Co. v. Dir. of Revenue*, 182 S.W.3d 226, 228 (Mo. banc 2005).

## III. DISCUSSION

### A. Substantive Provisions of Sales Tax Do Not Apply to Gaming Tax.

President contends that the AHC erred in finding that President was not entitled to a refund of the use tax it paid on purchases of gaming equipment. It claims entitlement based on section

---

5. After accounting for the use tax paid ($223,560.79) less the sales tax owed ($200,693.25) and less additional liability ($10,779.01) due to miscalculations in computing the use tax originally paid, President received a refund of $12,088.53.

6. The AHC also made findings relating to the timeliness of President's claims. It found that President's claim for a refund of the use tax paid on gaming equipment for the first quarter of 1995 was barred because it was not filed until April 2003, *see* sec. 144.190.2, RSMo Supp.2006 (three-year limitation period), and was not subject to any waivers providing an extension for refund claims. It also determined that President's claims relating to refund of tax paid on "comps" were timely because they were either covered by and made within three years of a waiver providing for an extension for refund claims or made within three years of the date the auditor allowed offsets of the amounts President had erroneously reported as use tax against the sales tax it should have reported. *See id.* The parties addressed these statute of limitation issues in their briefs, but this Court need not address them to resolve this case.

313.822's mandate that "all functions incident to the administration, collection, enforcement, and operation of the tax imposed by [the sales tax law] shall be applicable" to the gaming tax. President relies on this language to argue that the gaming tax is the "functional equivalent" of the sales tax and, therefore, all substantive provisions of the sales tax law—including exemptions and exclusions—apply to the gaming tax. In this instance, President paid use tax, not sales tax, on its gaming equipment. As President notes, however, any exemptions or exclusions provided for sales tax must also be provided for use tax.[7] Thus, President extends its argument, claiming that the gaming tax incorporates all exemptions and exclusions applicable to the sales tax and the use tax.[8]

■ Resolution of President's claim depends on the meaning of the phrase "all functions incident to the administration, collection, enforcement, and operation of the tax imposed by [the sales tax law] shall be applicable" as used in section 313.822. In construing this phrase, "[t]he primary rule ... is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *Nelson v. Crane,* 187 S.W.3d 868, 869–870 (Mo. banc 2006). "If terms within a tax statute are defined by the legislature, this Court must give effect to the legislature's definition." *Jones v. Dir. of Revenue,* 832 S.W.2d 516, 517 (Mo. banc 1992). Otherwise, in determining legislative intent, a court considers "statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed." *Lane v. Lensmeyer,* 158 S.W.3d 218, 226 (Mo. banc 2005) (noting that tax statutes should be construed in context with each other). Similarly, "[r]elated clauses are to be considered when construing a particular portion of a statute." *Marre v. Reed,* 775 S.W.2d 951, 953 (Mo. banc 1989).

■ Applying these rules, it is evident that the sales tax and gaming tax are two separate taxes. First, the two taxes apply to two different types of transactions. Whereas the gaming tax imposes a tax on the "adjusted gross receipts," or winnings, of an excursion gambling boat, sec. 313.822; sec. 313.800(1), (15), RSMo Supp. 2006, the sales tax imposes a tax on "gross receipts," or the total sales price of all sales at retail. Sec. 144.020, RSMo Supp. 2006; sec. 144.010.1(3), RSMo Supp.2006.

In addition to this difference in the very nature of the two taxes, the statutory and regulatory framework treats the sales tax

---

7. *Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 70, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963) ("equal treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out-of-state"); *see also Associated Indus. of Mo. v. Lohman,* 511 U.S. 641, 653, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994) ("The State remains free to authorize political subdivisions to impose sales or use taxes, as long as discriminatory treatment of interstate commerce does not result").

8. Building upon this basic argument, President claims that both the resale exemption and the exemption for "machines used in commercial, coin-operated amusement and vending business[es]" apply to its gaming equipment purchases. *See* sec. 144.615(6), RSMo Supp.2006; sec. 144.518, RSMo Supp. 2006. President also raises a third argument, refuting the AHC's decision that the statute of limitation barred President's claim for the first quarter of 1995. *See* sec. 144.190.2, RSMo Supp.2006. All three of these arguments rely on President's contention that the sales tax and the gaming tax are functional equivalents of each other. This Court does not reach these arguments because it rejects the premise on which they are based.

as a separate and distinct tax from the gaming tax. This distinction is evident from the sales tax law's specific statement that imposition of the sales tax "shall be in addition to any and all other taxes." Sec. 144.050. One of the "other taxes" that Missouri law imposes upon gaming boats is the gaming tax. Sec. 313.822. Similarly, a statute governing licensed gaming declares that all excursion gambling boat licensees are subject to all sales taxes and use taxes. Sec. 313.820.2, RSMo Supp.2006. Tax regulations also state that each excursion gambling boat "licensee is responsible for all sales taxes as may be applicable under" the sales tax law. 11 CSR 45–11.080(1). Thus, under the plain language of the statutes and applicable regulation, any gaming tax imposed upon an excursion gambling boat like President is in addition to any sales tax to which it is subject. Because the two taxes are distinct, the exemptions of one would not apply to the other without some express provision that indicates otherwise.

The legislature has specifically and directly incorporated sales tax exemptions into a number of other tax statutes by including language that "[a]ll exemptions granted . . . to the sale of certain articles and items of tangible personal property and taxable services under the [sales tax law] . . . are hereby made applicable to the imposition and collection" of this tax. *See,*

*e.g.,* sec. 32.087.8, RSMo Supp.2006 (local sales tax); sec. 67.2530.10(2), RSMo Supp. 2006 (district sales tax); sec. 184.845.9 (museum district sales tax); sec. 238.235.4(2), RSMo Supp.2006 (transportation development district sales tax); sec. 238.410.7 (transit authority sales tax).[9] The same, however, has not been done to the gaming tax statute. Had the legislature intended the resale or any other exemption of the sales tax law to apply to the gaming tax, it knew how to expressly craft such an exemption. That the legislature did not do so indicates its intent that sales tax exemptions not apply to the gaming tax.

President nonetheless suggests that the legislature *sub silencio* intended to make the resale exemption and a whole host of other substantive provisions of the sales tax law applicable to the gaming tax when it stated in section 313.822 that "all functions incident to the administration, collection, enforcement, and operation of the tax imposed by [the sales tax law] shall be applicable" to the gaming tax. Otherwise, President argues, that clause has no coherent meaning.

To the contrary, the language relied on by President simply reflects the fact that the gaming tax statute does not set out an administrative framework for application of its provisions.[10] Rather than do so, the legislature provided that the provisions

---

9. *See also* sec. 67.1775.5, RSMo Supp.2006 (local sales tax for community children's services fund); sec. 67.2030.6, RSMo Supp.2006 (sales tax to promote tourism in city); sec. 94.577.5, RSMo Supp.2006 (sales tax for capital improvements in certain cities); sec. 94.580.3 (sales tax for flood relief projects); sec. 94.890.8 (sales tax in St. Louis County to fund capital improvements); sec. 94.1000.3 (medically indigent sales tax for St. Louis); sec. 94.1010.3 and sec. 94.1012.3, RSMo Supp.2006 (economic development sales tax in certain cities); sec. 144.759.4, RSMo Supp. 2006 (additional local use tax for economic development); sec. 238.236.9, RSMo Supp.

2006 (transportation development district sales tax) (all stating that section 32.087, which itself incorporates the exemptions provided in the sales tax law, applies to the "tax imposed under this section").

10. For example, section 313.822 mandates that if the gaming commission is unsatisfied with the payment from an excursion gambling boat licensee, the commission can issue an assessment of the amount due against the licensee. Although the gaming tax statute imposes time limits for contesting the assessment and requires the holding of a hearing, neither 313.822 nor any other gaming statute

governing administration, collection, enforcement and operation of the sales taxes would apply.

The gaming tax statute is not unique in incorporating certain portions of the administrative framework governing the sales tax. Indeed, the phrase "all functions incident to the administration, collection, enforcement, and operation of the tax" is used in dozens of other statutes,[11] and President concedes that the use of this phrase does not incorporate all the sales tax exemptions and other substantive provisions of the sales tax into those statutes. Indeed, it would be nonsensical to do so since many of the statutes using this "all functions incident to" language are the same statutes that expressly incorporate sales tax exemptions.[12] *Garland v. Dir. of Revenue*, 961 S.W.2d 824, 828 (Mo. banc 1998) (this Court does "not presume that the legislature engages in redundant acts, especially when the language used in the statutory sections clearly serves two distinct purposes") (internal citations omitted).

President instead attempts to distinguish the multitude of other statutes using the phrase "shall perform all functions incident to the administration, collection, enforcement, and operation of the tax" by

arguing that the phrase has a different connotation as used in those statutes because they identify the individual, usually the Director, who shall perform the listed functions. *See, e.g.*, sec. 32.087.6, RSMo Supp.2006. By contrast, section 313.822 does not, as part of this phrase, state who is to perform these functions. It is unclear why this distinction would be relevant even were no one identified in section 313.822 to carry out those functions. In any event, the identification of who is to carry out the functions is made in a clause of section 313.822 that precedes the "all functions incident to" language. Sec. 313.822 (requiring return of gaming taxes to the Missouri gaming commission, "who shall transfer such taxes" to the Director). The distinction is of no import.

Consistent with the legislature's repeated use of the language "all functions incident to the administration, collection, enforcement, and operation of the tax" in other statutes as providing a framework for governing administrative functions related to the tax, this Court construes the phrase as used in section 313.822 to incorporate the operational and administrative scheme of the sales tax law and not to also *sub silencio* incorporate the substantive provisions of the sales tax law. Presi-

---

provides further guidance. The sales tax law, however, contains provisions regarding the form of assessment, sec. 144.220, 144.230, the procedures to follow when a return or payment is not made, sec. 144.250, RSMo Supp. 2006, record-keeping requirements, sec. 144.310, 144.320, and procedures regarding how to initiate a lawsuit to recover unpaid taxes. Sec. 144.390.

**11.** *See* sec. 32.087.6, RSMo Supp.2006; sec. 67.623.1(2); sec. 67.657.5(2); sec. 67.657.9(2); sec. 67.676.1; sec. 67.676.2; sec. 67.1002.2(2); sec. 67.1012.1(2); sec. 67.1158.3(2); sec. 67.1361.4(2), RSMo Supp. 2006; sec. 67.1362.2(2); sec. 67.1366.3(2); sec. 67.1775.2, RSMo Supp.2006; sec. 67.2030.3(2), RSMo Supp.2006; sec. 67.2530.9(1), RSMo Supp.2006; sec.

94.577.5, RSMo Supp.2006; sec. 94.580.3; sec. 94.822; sec. 94.830.3(2); sec. 94.879(2); sec. 94.890.8; sec. 94.1000.3; sec. 94.1010.3; sec. 94.1012.3, RSMo Supp.2006; sec. 144.759.4, RSMo Supp.2006; sec. 184.845.7; sec. 238.235.3, RSMo Supp.2006; sec. 238.236.8, RSMo Supp.2006; and sec. 238.410.6.

**12.** *See* sec. 32.087, RSMo Supp.2006; sec. 67.1775, RSMo Supp.2006; sec. 67.2030, RSMo Supp.2006; sec. 67.2530, RSMo Supp. 2006; sec. 94.577.5, RSMo Supp.2006; sec. 94.580.3; sec. 94.890.8; sec. 94.1010.3; sec. 94.1012.3, RSMo Supp.2006; sec. 144.759.4, RSMo Supp.2006; sec. 184.845; sec. 238.235, RSMo Supp.2006; sec. 238.236, RSMo Supp.2006; sec. 238.410.

dent's claims of entitlement to a refund of the use tax paid on purchases of gaming equipment are without merit. The AHC's denial of this use tax refund is affirmed.

## B. Resale Exemption Does Not Apply When Cost of Free Items are Not Factored Into Cost of Items Subject to Sales Tax.

■ The Director, as cross-petitioner, claims that the AHC erred in finding that President was entitled to a refund of the taxes it paid on purchases of food and drink used for "comps."[13] Relying on *Sipco* and similar cases, the AHC reasoned that the resale exemption applies to President's purchases of food and drinks used as "comps." The Director argues that the present case is distinguishable from the cases relied on by the AHC and that they support the Director's argument that President is not entitled to a tax refund on food purchased for "comps." This Court agrees.

In *Sipco*, this Court held that the Director erred in assessing use tax against Sipco's purchase of dry ice used in packaging its pork products because "the value of the dry ice was factored directly or indirectly into the total consideration paid for the pork." 875 S.W.2d at 542. *Sipco* stands for the proposition that "where a business does not charge separately for goods transferred to customers but, rather, factors the cost of the goods into the price of all items sold to the customers," the business' purchase of such goods is not subject to sales tax or use tax. *Aladdin's Castle v. Dir. of Revenue*, 916 S.W.2d 196, 197 (Mo. banc 1996), *citing Sipco*, 875 S.W.2d at 542.

■ *Sipco* is just one of a long line of cases to so hold. All of these cases make clear, however, that the exemption from sales or use tax is premised on the fact that the costs of the free goods are factored into the cost of items that are subject to sales tax. *See, e.g., King v. Nat'l Super Markets, Inc.*, 653 S.W.2d 220, 222 (Mo. banc 1983) (supermarket's paper bag purchases exempt from use tax because "National includes the cost of the paper bags in computing the price charged its customers. In this way National pays sales tax on the paper bags when it pays tax upon the gross revenue derived from its retail sales").[14] This is because of the underlying reason for the resale exemption in the Missouri tax code: avoiding double taxation. *Sipco*, 875 S.W.2d at 541. In situations in which a business provides

13. As a preliminary matter, the parties dispute the timeliness of some of President's claims relating to "comps." Even assuming *arguendo* that all the claims were timely, President would not be entitled to a refund unless this Court agrees with President and the AHC that case law prohibits the imposition of sales tax on these purchases. Because this Court does not agree, the Court need not address the timeliness issue.

14. *See also Ronnoco Coffee Co. Inc. v. Dir. of Revenue*, 185 S.W.3d 676, 677–79 (Mo. banc 2006) (coffee equipment not subject to use tax when the equipment's cost factored into price charged to customers for coffee beans); *Kansas City Royals Baseball Corp. v. Dir. of Revenue*, 32 S.W.3d 560, 561–63 (Mo. banc 2000) (Royals entitled to refund on use tax paid on promotional items because "the cost of purchasing those items is factored into the price charged for each ticket of admission to a Royals game," on which Royals collects and remits sales tax); *Aladdin's Castle*, 916 S.W.2d at 197–98 (Aladdin not subject to sales tax on prizes customers received in exchange for "tickets" they won playing arcade games because cost of prizes was factored into price charged for tokens needed to play games and "Aladdin pays a sales tax on the gross receipts from the sale of the tokens"); *Dean Machinery Co. v. Dir. of Revenue*, 918 S.W.2d 244, 245–47 (Mo. banc 1996) (Dean's "rework parts"—parts used to repair damage caused by Dean's error and provided at no extra charge—excluded from sales tax liability because "cost of rework parts [is covered] in the price it charges for new parts"); *House of*

goods to its customers free of charge and factors the cost of the goods into the price of other items subject to sales tax, then to impose sales tax or use tax liability on the purchase of those goods "would amount to double taxation and would not serve the express purpose" of the sales tax or use tax. *King,* 653 S.W.2d at 222; *accord, State ex rel. Denny's v. Goldberg,* 578 S.W.2d 925, 927–28 (Mo. banc 1979); *Weather Guard, Inc. v. Dir. of Revenue,* 746 S.W.2d 657, 658 (Mo.App. E.D.1988).

Such is not the situation in the present case. It is undisputed that the cost of the food and drink used for "comps" is not factored into the retail sales prices that President charges its customers for meals in its restaurant or deli. Instead, the costs of the "comps" are a factor considered when setting the casino's winnings, which are subject to the gaming tax. Thus, the costs of President's "comps," unlike the "giveaways" in the cases on which the AHC relied, are not factored into items subject to sales tax.

For the reasons thoroughly discussed above, the gaming tax is not the functional equivalent of the sales tax, and the exclusions and exemptions applicable to the latter do not apply to the former. Thus, *Sipco* does not apply, and President is not entitled to a refund of the use tax it paid on "comps." The AHC's grant of this tax refund is reversed.

## IV. CONCLUSION

President is not entitled to a refund of the use tax it paid on purchases of gaming

equipment because the gaming tax President pays on its winnings from use of the gaming equipment is not the functional equivalent of the sales tax; therefore, the sales and use tax exclusions and exemptions do not apply. President is not entitled to a refund of the taxes paid on purchases of food used for "comps" because their cost is not factored into the price charged for items that are subject to sales tax, as required for application of the resale exemption. Accordingly, the AHC decision is affirmed in part and reversed in part, and the case is remanded.

All concur.

*Lloyd, Inc. v. Dir. of Revenue,* 884 S.W.2d 271, 275–76 (Mo. banc 1994) ("Lloyd did not owe sales or use tax on its purchases of packing materials" because the court assumed that their costs were "factored into the price charged the end purchaser," which included sales tax); *State ex rel. Denny's v. Goldberg,* 578 S.W.2d 925, 927–28 (Mo. banc 1979) (because "[m]enu prices, upon which sales tax is paid, are set by reference to the cost of

... meals furnished to employees," Denny's not subject to tax on food purchased to prepare employee meals); *Weather Guard, Inc. v. Dir. of Revenue,* 746 S.W.2d 657, 658 (Mo. App. E.D.1988) (Weather Guard not subject to use tax on insulation machine provided free of charge to customers because cost of machine factored into cost of insulation to consumers, who "paid sales tax on the increased cost of the insulation").