ICC MANAGEMENT, INC., Appellant,

v.

**DIRECTOR OF REVENUE,**
Respondent.

No. SC 89559.

Supreme Court of Missouri,
En Banc.

June 16, 2009.

Rehearing Denied Sept. 1, 2009.

John W. Simpson, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, for Appellant.

Chris Koster, Attorney general, Gary L. Gardner, Assistant Attorney General, Omar Davis, Jefferson City, MO, for Respondent.

*PETITION FOR REVIEW OF A DECISION OF THE ADMINISTRATIVE HEARING COMMISSION.*

LAURA DENVIR STITH, Chief Justice.

ICC Management, Inc., operates a private jail facility in Missouri. It seeks review of the decision of the Administrative Hearing Commission ("commission") that it is liable for sales and use taxes on its purchases of inmate consumables, such as meals, clothing, soap, shampoo and medical supplies. ICC argues that its purchases are subject to the resale exemption from sales and use tax because it purchased those products for resale to the municipalities that sent inmates to its jail facility. This Court disagrees. The resale exemption applies only where the item purchased is later subject to a taxable sale at retail. Municipalities are tax-exempt entities, sales to which are not taxed; therefore, those sales do not qualify for the resale tax exemption. The commission's decision is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

ICC is a private for-profit corporation that operates a private jail facility near Holden. It contracts mainly with certain municipalities and counties in Missouri to provide jail services.[1] Pursuant to its contracts with the municipalities, ICC provides inmates with consumable items including three meals per day, clothing, soap, shampoo and medical supplies. The governmental entities paid a per-inmate fee that ranged from $32.50 to $50 during the periods at issue. ICC does not charge and cannot charge the municipalities sales tax on the consumables it provides to inmates under the contracts because governmental entities are exempt from paying sales tax. But ICC says it factors the cost of the consumables into the fee it charges the municipalities and, therefore, "resells" these consumables to the municipalities. ICC says this entitles it to claim a resale exemption from sales and use tax on its purchase of the consumables. ICC, therefore, did not pay sales tax when it purchased consumables from in-state vendors from January 2002 through December 2005 and provided resale exemption certificates to those vendors.

The director of revenue ("director") performed a sales tax audit of ICC for the January 2002 through December 2005 period during which ICC claimed the sales tax exemption. The director also performed a use tax audit for the period from January 2000 through December 2005. The director's auditor discovered that ICC had deducted sales tax from the invoices it received for goods it purchased and then paid the balances, as if it had exemptions

---

1. For some smaller local governments, ICC provides services pursuant to contract rates, even though it does not have contracts with them. Additionally, ICC receives some prisoners through a work release program, for which it is paid directly by the court. ICC also has housed prisoners overnight who were being transported from one state to another. During the period of time at issue in this case, ICC contracted with only one out-of-state entity—Wyandotte County, Kansas.

from municipalities. ICC provided exemption certificates that exempted social and charitable organizations, penal institutions, manufacturers that utilize materials that become component parts, and those with a retail sales license, under sections 144.030.2(2) and (20), RSMo 2000.[2] The director concluded that ICC is liable for Missouri sales or use tax on its purchases of inmate consumables and assessed deficiencies of $14,056.25 in sales tax and $5,459.79 in use tax, plus interest, on ICC's purchases of food, clothing and other consumables during the audit periods.

The commission affirmed the director's assessment of the tax, holding that the resale exclusion is not applicable because it requires a **taxable** sale at retail. Without the benefit of that exclusion, the commission held that ICC is liable for sales and use tax on the consumables it purchased during the audit period.

ICC seeks reversal of the commission's decision, arguing that if it purchased the consumable items for the purpose of resale to municipalities, those purchases qualify for the resale exemption whether or not the resale is a taxable sale at retail. The director argues that ICC is not transferring tangible personal property, but instead, is providing non-taxable detention services that include feeding and clothing the inmates but that, even were ICC selling consumables to municipalities, those sales do not fall within the statutory definition of sales at retail because municipalities are tax-exempt entities.

## II. STANDARD OF REVIEW

■ "This Court has jurisdiction to review the commission's decision pursuant to the Missouri Constitution article V, section 3 because the case involves construction of state revenue laws." *MFA Petroleum Co. v. Director of Revenue*, 279 S.W.3d 177, 178 (Mo. banc 2009).

[The] commission's interpretation of revenue laws is reviewed de novo. The decision is upheld when it is "authorized by law and supported by competent and substantial evidence upon the whole record."

*American Nat. Life Ins. Co. of Texas v. Director of Revenue*, 269 S.W.3d 19, 21 (Mo. banc 2008) (citation omitted); § 621.193. Taxing statutes are "strictly construed in favor of the taxpayer and against the taxing authority." *President Casino, Inc. v. Dir. of Revenue*, 219 S.W.3d 235, 239 (Mo. banc 2007). Tax exemptions are "strictly construed against the taxpayer, and any doubt is resolved in favor of application of the tax." *Southwestern Bell Telephone Co. v. Dir. of Revenue*, 182 S.W.3d 226, 228 (Mo. banc 2005).

## III. THE RESALE EXCLUSION IS INAPPLICABLE

■ The State of Missouri imposes a tax "upon all sellers for the privilege of engaging in the business of selling tangible personal property ... at retail in this state." § 144.020. Out-of-state purchases are subject to a "compensating use" tax under section 144.610 "for the privilege of storing, using or consuming within this state any article of tangible personal property."

■ Missouri only seeks to impose a single tax on such transactions. For this reason, Missouri statutes provide for an exemption from the imposition of a sales or use tax on goods that are held solely for sale at retail. *See* §§ 144.010.1(10), 144.615(6). This resale exemption avoids multiple taxation of the same property as it passes through the chain of commerce from producer to wholesaler to distributor to retailer. *Sipco, Inc. v. Director of Revenue*, 875 S.W.2d 539, 541 (Mo. banc 1994). "To be entitled to the resale exemption,

---

**2.** All subsequent statutory references are to RSMo 2000 unless otherwise indicated.

the taxpayer must resell the item purchased or incorporate its value into other items it resold." *President Casino, Inc.*, 219 S.W.3d at 237. The underlying reason for the resale exemption in the Missouri tax code is avoiding double taxation, for:

> In situations in which a business provides goods to its customers free of charge and factors the cost of the goods into the price of other items subject to sales tax, then to impose sales tax or use tax liability on the purchase of those goods "would amount to double taxation and would not serve the express purpose" of the sales tax or use tax.

*Id.* at 243–44 (citations omitted).

The question is whether ICC qualifies for the resale tax exemption because its sales to the municipalities are not subject to tax. This Court's reasoning in *Westwood Country Club v. Director of Revenue*, 6 S.W.3d 885 (Mo. banc 1999), is dispositive here. In that case, Westwood Country Club claimed an exemption from sales tax on its purchases of food and beverages that it would later serve its members, arguing that it was entitled to a resale exemption, even though its later sale of the food and beverages to its members was not taxable pursuant to *Greenbriar Hills Country Club v. Director of Revenue*, 935 S.W.2d 36 (Mo. banc 1996). This Court disagreed, relying on *Greenbriar*.

In that case, Greenbriar Country Club paid tax on its purchases of food and beverages. This Court was required to determine the taxability of Greenbriar's sale of food and beverages to its members and their guests. This Court held that, because the club sold the food and beverages only to its members and their guests, and did not serve the general public, its sales did not constitute a "sale at retail" under sections 144.010.1(10)(e) and 144.020.1(6) [3] and so were not subject to sales tax.

In *Westwood*, the country club paid *neither* sales or use tax on its purchases of food or beverages *nor* sales or use tax on the sales of food or beverages to its members. It argued that this was proper because it bought the food and beverages so it could resell it to its members and their guests; therefore, it bought it for resale, even if that resale was itself not taxable under *Greenbriar*. This Court disagreed, stating: "[T]he purpose of Missouri's sales tax system is to tax property once and not at various stages in the stream of commerce." *Westwood*, 6 S.W.3d at 888. But, it noted, Westwood wanted to invoke the principle of avoiding double taxation "to avoid being taxed even once." *Id.* This Court found that such an application of Missouri's resale exemption was inconsistent with the purpose of the statute. That is, because Westwood club patrons, under *Greenbriar*, were free from tax on the food and beverages the club served them, that service did not qualify as a sale at retail to the patrons; so, the club was required to pay taxes on the food and beverages, thereby allowing the goods to be taxed once.

This rationale is directly applicable here. ICC's supply of the food and other consumables to the inmates will not be taxed due to application of the governmental sales exemption.[4] As in *Westwood*, this

---

3. Both of those sections impose sales tax on "[s]ales or charges for all rooms, meals and drinks furnished at any hotel, motel, tavern, inn, restaurant, eating house, drugstore, dining car, [tourist camp or cabin], or other place in which rooms, meals or drinks are regularly served to the public." §§ 144.010.1(10)(e), 144.020.1(6).

4. Governmental entities are exempt from paying sales tax when they purchase tangible personal property, as the Missouri Constitution prohibits the legislature from passing laws imposing sales tax on counties or other political subdivisions:

> The general assembly shall not have power: (10) To impose a use or sales tax upon the use, purchase or acquisition of property

disqualifies ICC from claiming the resale exemption, because the rationale for that exemption—the avoidance of double taxation—does not apply. Indeed, if ICC were correct in its argument that its purchases of consumables are not subject to tax because they will be served to inmates, but that its sales are not subject to tax because of the governmental tax exemption, then no tax would be imposed on the purchase, use or sale of these consumables at all. The purpose of the exemption is not to provide a special benefit to ICC that is not enjoyed by other taxpayers. As in *Westwood,* the taxpayer must pay a tax on its purchase of consumables where, as here, its resale of the consumables is not taxable.

■ This interpretation of the tax and exemption statutes is borne out by the definition of "seller" in Missouri's tax statutes. A "seller" is defined as "a person selling or furnishing tangible personal property or rendering services, **on the receipts from which a tax is imposed** pursuant to section 144.020." § 144.010.1(11) (emphasis added). To be a "seller" as that term is used in Missouri's taxing statutes, therefore, a tax must be imposed on the receipts from sale of personal property or services. All parties concede that no tax is imposed pursuant to Missouri Constitution art. III, sec. 39(10) or section 144.030.1 on the property or services that ICC provides to the municipalities with which it contracts. ICC, therefore, does not meet the definition of a "seller." The exemption for goods held for resale is contained in sec-

tion 144.010.1(10), which defines "sale at retail." "Put simply, there must be a 'sale at retail' in order for the 'resale' exclusion of that section to apply." *Westwood,* 6 S.W.3d at 888.

*McDonnell Douglas Corp. v. Director of Revenue,* 945 S.W.2d 437 (Mo. banc 1997), is not to the contrary. As this Court noted in *Westwood,* McDonnell Douglas' (MDC's) sale was exempted from tax under an exemption applicable to sales and purchases involving the United States government, which stated:

> There is hereby specifically exempted from ... the computation of the tax levied, assessed or payable ... any retail sale which the State of Missouri is prohibited from taxing pursuant to the Constitution or laws of the United States of America. . . .

§ 144.030.1. That exemption applied in *McDonnell Douglas* because applicable government regulations in *McDonnell Douglas* provided that title to property purchased by a contractor, such as MDC, vested in the government immediately. These unusual title-vesting provisions of the contract made the property purchased by MDC the property of the United States government *"before* the property was used or consumed." *Id.* at 440. Taxes could not be charged to the government. Therefore, MDC did not owe any tax. *Id. McDonnell Douglas* does not assist ICC here.

paid for out of the funds of any county or other political subdivision.
Mo. Const. art. III, sec. 39(10). The legislature has recognized the limitation of its power to impose sales tax on counties or other political subdivisions:
There is hereby specifically exempted from ... the computation of the tax levied, assessed or payable ... such retail sales of tangible personal property which the gener-

al assembly of the State of Missouri is prohibited from taxing or further taxing by the constitution of this state.
§ 144.030.1. This Court does not consider the issue of whether the provision of private jail services to the municipalities qualifies for the governmental tax exemption as a governmental function, as neither party addressed this issue.

## IV. CONCLUSION

The decision of the commission is affirmed.

PRICE, TEITELMAN, RUSSELL, BRECKENRIDGE and FISCHER, JJ., concur.

WOLFF, J., concurs in separate opinion filed.

MICHAEL A. WOLFF, Judge concurring.

I concur in the principal opinion. However, the opinion seems to assume that the activities of ICC Management, Inc., a private corporation operating a jail, are not unlawful. Is there any constitutional or statutory authority for a private corporation to hold human beings in jail against their will? [1]

I am not willing to assume that private jailing is lawful. But whether the business of operating a private jail is lawful or not, I do agree it is not entitled to a tax exemption.

---

1. Senate Bill 44 (CCS No. 2 HCS SCS SB 44), passed in the 2009 General Assembly, provides recognition and some regulation of private jails. It would not affect the time period involved in this case.