# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 22, 2015 Session

## NIUKLEE, LLC, v. COMMISSIONER, TN DEPT. OF REVENUE

**Appeal from the Chancery Court for Davidson County**
**No. 11236III     Ellen H. Lyle, Chancellor**

_____

**No. M2014-01644-COA-R3-CV – Filed November 9, 2015**
_____

The Commissioner of Revenue assessed a tax based on the taxpayer's use of an aircraft purchased out of state. Taxpayer sought review from the Tennessee Department of Revenue but was denied relief following an informal hearing. Taxpayer paid the tax and filed a complaint in the Chancery Court for Davidson County seeking a refund on the ground that it qualified for the sale for resale exemption in the Tennessee Retailers' Sales Tax Act because it provided the seller with a certificate of resale and immediately leased the aircraft to third party users. The Department responded, arguing that the leases did not satisfy the exemption's "bona fide sale" requirement. Following a non-jury trial, the Chancery Court reversed the Department's assessment, concluding that the exemption applied because (1) the leases were legitimate and not illusory and were not chiefly motivated by tax avoidance, (2) the economic substance doctrine has not been adopted in Tennessee to analyze the "bona fide sale" requirement, and (3) the Department failed to present proof sufficient to pierce the corporate veil of the taxpayer. The Department appealed. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right: Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER, J., and KENNY ARMSTRONG, J., joined.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Nicholas G. Barca, Senior Counsel, Nashville, Tennessee, for the appellant, Richard H. Roberts, Commissioner of Revenue, State of Tennessee.

Brett R. Carter, Nashville, Tennessee, for the appellee, Niuklee, LLC.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

In January 2004, Robert Klee and Charles Ingram founded Hometown Quotes, LLC ("Hometown"), an insurance shopping portal that provided insurance price quotes to consumers and sold consumer information to insurance carriers. They each had a 50% ownership interest in the company and shared equal control of all business decisions. Hometown grew rapidly, with more than 40 employees and revenues over $1 million per month by 2008. As the company grew, Klee and Ingram were increasingly required to travel around the country to attend conventions and meet with insurance agents. In early 2008, Klee, who was taking private flying lessons at the time, decided that the increased travel demands justified the purchase of an aircraft to make Hometown's business calls. Klee also wanted access to an aircraft for personal use. Klee testified that he discussed the possibility of purchasing an aircraft through Hometown with Ingram, but Ingram indicated that he would not approve of the purchase.

Although Klee lacked the authority to purchase an aircraft on behalf of Hometown without Ingram's approval, he still wanted access to an aircraft for personal use and use in connection with Hometown's business. After speaking with his attorneys and accountant, Klee retained the assistance of Advocate Consulting Legal Group, PLLC ("Advocate Consulting"), a law firm specializing in structuring transactions involving aircraft. In April 2008, acting on the advice of Advocate Consulting, Klee formed a Delaware limited liability company, Niuklee, LCC ("Niuklee"). Klee was the 98% owner and chairman of Niuklee; Klee's wife, Wenying Niu, was the 2% owner and secretary of the company. The principal place of business of Niuklee was Hometown's office. The purpose of Niuklee was to purchase and hold title to the aircraft and to lease it to Hometown and Klee.

On April 2, 2008, Niuklee purchased a Cessna Skylane C-182T for approximately $360,000 from a company in Ohio and entered into lease agreements with Hometown and Klee.[1] In December 2008, Niuklee traded that aircraft for a $329,000 credit towards the purchase of the aircraft at issue in this case, a Cessna C-400, from the same company. The purchase price of the Cessna C-400 aircraft was $620,000. To pay the balance owed on the first aircraft and the remainder of the Cessna C-400 purchase price, Niuklee took out a $325,000 bank loan, and Klee and his wife paid approximately $300,000 of their own

---

[1] Klee became a licensed pilot in June 2008.

money.[2]  Rather than pay sales tax on the purchase price of the Cessna C-400 aircraft, Niuklee provided the seller with a blanket certificate of resale.

After completing its purchase of the Cessna C-400 aircraft, Niuklee entered into new lease agreements with Hometown and Klee.  Under the terms of its lease with Hometown, Niuklee agreed to lease the aircraft to Hometown for business use at a rate of $80 per flight hour, and Hometown agreed to be responsible for all operating costs of the aircraft.  Under the terms of its lease with Klee, Niuklee agreed to lease the aircraft to Klee for noncommercial transportation at a rate of $183 per flight hour, less the cost of fuel.  Niuklee did not lease the plane to any parties other than Hometown and Klee.

In early 2009, Hometown's business declined sharply and never recovered.  Over the course of the next three years, Hometown gradually laid off all of its employees.  Ingram left the company in 2011, and, in 2012, Klee sold Hometown for $1.2 million, all of which was used to cover its debts.  As Hometown's business declined, so did its need to use the plane.  As a result, Niuklee struggled financially, and Klee, Niu, and Hometown frequently transferred money into its bank accounts to cover its expenses.  According to its flight logs, Hometown and Klee began using the aircraft in December 2008.  Niuklee's annual rental calculations reflect that between 2009 and 2011, Niuklee leased the aircraft to Hometown for approximately 377 flight hours and to Klee for approximately 15.  During that three-year period, Niuklee collected and remitted $2,286 to the Department in sales tax on its income from the leases.  In March 2012, Niuklee sold the aircraft for approximately $485,000.

After discovering Niuklee's purchase of the Cessna C-400 aircraft, the Department sent a letter to Niuklee requesting the information needed to determine whether the required sales or use tax had been paid on the aircraft.  Niuklee apparently did not respond to the Department's request, and the Department calculated the amount of tax and interest due based on an estimated value of $400,000 for the aircraft.  On June 9, 2010, the Department issued a notice of assessment seeking payment of $28,080, plus interest, from Niuklee for its failure to pay use tax in Tennessee.  Shortly after receiving the assessment, Niuklee requested an informal taxpayer conference with the Department.  Niuklee maintained that the sale-for-resale exemption applied and that it was therefore not required to pay use tax on the cost of the aircraft.

In December 2010, the Department provided Niuklee with a written response to the informal taxpayer conference.  The Department upheld its tax assessment based on the finding of its auditor that Niuklee and Hometown were owned and operated by the same persons.  The Department further concluded that the lease transactions between the two

_____

[2] Niuklee also purchased and installed $42,175 in additional equipment for the Cessna C-400 aircraft in 2009.

entities were part of a scheme to avoid paying sales and use taxes on the purchase price of the airplane. Though the Department acknowledged that Niuklee disputed that characterization of its relationship with Hometown, the Department concluded that Niuklee had not presented sufficient proof to overturn its tax assessment. Later, after learning that Niuklee purchased the Cessna C-400 aircraft for $620,000, the Department issued a revised assessment seeking a payment of $43,480 plus interest.

On February 22, 2011, Niuklee filed suit against Richard H. Roberts, the Commissioner of Revenue for the State of Tennessee, in the Davidson County Chancery Court seeking a declaratory judgment that the Department's assessment was invalid because Niuklee's lease of the aircraft to Hometown qualified as a "sale" under Tennessee Code Annotated Section 67-6-102(78)(A) (Supp. 2015).[3] Niuklee asserted that because it purchased the aircraft with the intent to resell it and did, in fact, resell it in accordance with the Department's regulations, the purchase constituted a "sale for resale" within the meaning of Section 67-6-102(75)(A) and was therefore exempt from sales and use tax. On May 3, 2011, the Department filed an answer to Niuklee's complaint and a counterclaim seeking a judgment against Niuklee for the amount of the unpaid taxes, plus interest.

Following a lengthy period of discovery, both Niuklee and the Department filed cross motions for summary judgment on October 18, 2013. In its motion for summary judgment and supporting documents, Niuklee emphasized that it was a legal entity separate from the aircraft lessees and argued that its purchase and lease of the aircraft satisfied the "bona fide sale" requirement of the sale for resale exemption in accordance with Tennessee's sales and use tax law. Conversely, the Department argued that summary judgment should be entered in its favor for $43,480, plus interest and attorney's fees, because Klee created Niuklee to purchase and lease the aircraft solely to avoid tax liability. The Department asserted that Niuklee had no reasonable possibility of generating a profit on its own and served no business purpose other than to avoid tax liability.

Following a hearing, the trial court entered an order denying both cross motions for summary judgment. The trial court noted that one of the parties' primary disputes was the legal effect of the General Assembly's addition of the bona fide sale requirement to the sale for resale exemption in 2008.[4] The trial court also noted that many of the material facts of the case were undisputed. Nevertheless, the trial court concluded that a trial would be

---

[3] Unless indicated otherwise, we refer to the current version of the code because it is identical in pertinent part to the version cited by the parties.

[4] *See* 2007 Tenn. Pub. Acts Ch. 602, § 68, effective January 1, 2008.

4

necessary to resolve the competing inferences to be drawn from the facts and determine whether Niuklee's transactions constituted a bona fide sale.

The trial court conducted a non-jury trial over the course of two days on May 5 and 6, 2014. At the outset of the proceedings, the parties submitted a joint stipulation of facts reflecting that the Department had reduced its tax assessment after determining the value of the aircraft Niuklee traded in to purchase the Cessna C-400 and that Niuklee had made a payment towards the use tax assessment. Accordingly, the parties stipulated that Niuklee's outstanding liability on the tax assessment was $17,374.68, plus interest. The trial court heard testimony from Klee and Suzanne Meiners-Levy, an attorney with Advocate Consulting, for Niuklee. The Department presented the testimony of Joseph John Dini, an aircraft finance and leasing consultant.

On June 10, 2014, the trial court issued its detailed memorandum of findings of fact and conclusions of law. The trial court accredited Klee's testimony that Ingram would not approve of Hometown purchasing an aircraft. The trial court further found that: 1) Klee considered purchasing the aircraft personally, but was not inclined to do so because he was concerned about unnecessarily exposing his wife's assets to liability;[5] 2) Klee acted on the advice of Advocate Consulting in forming Niuklee to purchase and hold title to the aircraft; 3) based on its credibility assessment of the parties' respective expert witnesses, the lease rates Niuklee charged Hometown and Klee were commercially reasonable despite the fact that Niuklee never made an annual profit; and 4) much of Niuklee's failure could be attributed to its heavy reliance on Hometown and the sharp, unexpected decline in Hometown's business in 2009. Based on its findings and assessment of the evidence, the trial court concluded that:

— The leases in issue are legitimate and not illusory, and on their face satisfy the "bona fide" element of the Exemption. Additionally, the proof does not establish that the chief objective of the leases was the avoidance of tax liability.

— The economic substance test/criterion has not been adopted in Tennessee to analyze the "bona fide" element of the Exemption.

— The Commissioner has failed to demonstrate circumstances to pierce the corporate veil of the Plaintiff Taxpayer, which was another method asserted to prove the absence of bona fide leases.

---

[5] Klee's wife is a physician.

5

Accordingly, the sale for resale Exemption applies; the Plaintiff is entitled to the recovery it seeks; and the counterclaim of the Commissioner of Revenue is dismissed with prejudice.

On July 23, 2014, the trial court entered a final judgment order in which it ordered that the Department's assessment of Niuklee be set aside. Additionally, the trial court found that Niuklee, as the prevailing party, was entitled to an award of reasonable attorney's fees and litigation expenses pursuant to Tennessee Code Annotated Section 67-1-1803(d). However, the trial court reserved judgment as to the amount of the fees and expenses and certified its order as final and appealable pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. The Department filed a timely notice of appeal on August 19, 2014.

## ISSUES PRESENTED

On appeal, the Department contends that the trial court erred in setting aside its assessment of use tax on Niuklee's purchase of the Cessna C-400 aircraft because Niuklee's agreements to lease the aircraft to Hometown and Klee do not meet the "bona fide sale" requirement of the sale for resale exemption. Specifically, the Department contends that the leases Niuklee entered into with Hometown and Klee were not a bona fide sale because (1) one of the chief objects of the leases was to avoid tax liability and the leases were not objectively reasonable under the circumstances because they had no business purpose or economic substance; and (2) Niuklee existed solely as a vehicle for Hometown and Klee to use the aircraft without paying taxes on its acquisition, and the trial court should have disregarded its separate legal status. In response, Niuklee contends that it is a validly organized company that has observed all corporate formalities and that the leases it entered into with Hometown and Klee were legitimate transactions that met the requirements of the sale for resale exemption.

## STANDARD OF REVIEW

Our review of the trial court's judgment following a non-jury trial is de novo upon the record, accompanied by a presumption that the trial court's findings of fact are correct, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). For the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect. *Bridgewater v. Adamczyk*, 421 S.W.3d 617, 627 (Tenn. Ct. App. 2013) (citations omitted). We review the trial court's conclusions of law de novo with no presumption of correctness. *Graham v. Caples*, 325 S.W.3d 578, 581 (Tenn. 2010). The proper interpretation of a statute is a question of law, which we review with no presumption of correctness. *Mills v. Fulmarque, Inc.*, 630 S.W.3d 362, 366 (Tenn. 2012). The trial

court's determinations regarding witness credibility are entitled to great weight on appeal when the trial judge had the opportunity to observe the witnesses' demeanor and hear in-court testimony and will not be disturbed absent clear and convincing evidence to the contrary. *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011).

## DISCUSSION

## I.

The Tennessee Retailers' Sales Tax Act (the "Act"), codified at section 67-6-101 *et seq.* of the Tennessee Code, governs the imposition of sales and use tax in Tennessee. In relevant part, the Act imposes a tax on the sale of tangible personal property by retailers located within the state. Tenn. Code Ann. § 67-6-202. This tax is collected by the retailer and remitted to the Department because it is a tax on the privilege to "[e]ngage[] in the business of selling tangible personal property at retail in this state." Tenn. Code Ann. § 67-6-201(1).

To protect Tennessee retailers and discourage Tennessee residents from avoiding sales tax liability by purchasing tangible personal property in other states, the Act also imposes a use tax on tangible personal property that "is not sold, but is used, consumed, distributed, or stored for use or consumption in this state." Tenn. Code Ann. § 67-6-203(a). The use tax is intended to operate as a complement, not a supplement, to the sales tax. *Wylie Steel Fabricators, Inc. v. Johnson*, 179 S.W.3d 509, 517 (Tenn. Ct. App. 2005) (citing *Young Sales Corp. v. Benson*, 450 S.W.2d 574, 576 (Tenn. 1970)). Accordingly, to avoid duplicate taxation on out-of-state purchases, a taxpayer may receive a credit for like taxes paid to other states on the purchase of tangible personal property. *See* Tenn. Code Ann. § 67-6-507(a). "In other words, the amount of use tax liability is equal to the amount of sales tax liability less the sales tax paid in the state where the tangible personal property was purchased." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 84 (Tenn. 2010).

The Act also seeks to place the ultimate burden for the payment of sales and use tax on the end user of the tangible personal property. *Id*. Accordingly, intermediary dealers are relieved of the burden of collecting and remitting sales or use tax when they are not the end user. *Id*. For purposes relevant to this appeal, the Act defines a "dealer" as "every person . . . who . . . [i]mports, or causes to be imported, tangible personal property from any state or foreign country, for sale at retail, for use, consumption, distribution, or for storage to be used or consumed in this state." Tenn. Code Ann. § 67-6-102(23)(B). Thus, persons or entities falling within the statutory definition of a "dealer" are permitted certain exemptions from the payment of sales or use tax. *CAO Holdings, Inc.*, 333 S.W.3d at 84.

7

One significant exemption from sales or use tax, commonly referred to as the "sale for resale" exemption, is found in the Act's definition of "retail sale" or "sale at retail." The Act defines "retail sale" or "sale at retail" as "any sale, lease, or rental for any purpose other than for resale, sublease, or subrent." Tenn. Code Ann. § 67-6-102(76). Courts have construed the phrase "for any other purpose other than for resale" as creating an exemption that excludes sales for resale from taxation. *CAO Holdings, Inc.*, 333 S.W.3d at 84 (citing *Eusco, Inc. v. Huddleston*, 835 S.W.2d 576, 582 (Tenn. 1992); *NASCO, Inc. v. Jackson*, 748 S.W.2d 193, 194 (Tenn. 1988)). Such exemptions are intended to avoid multiple taxation of the same property as it passes through the chain of commerce from producer to wholesaler to distributor to retailer. *See ICC Mgmt., Inc. v. Dir. of Revenue*, 290 S.W.3d 699, 701 (Mo. 2009).

Prior to 2008, the Act did not specifically define the term "resale," and courts derived its meaning from the Act's definition of "sale." *See CAO Holdings Inc.*, 333 S.W.3d at 84. The Act defines a "sale" as "any transfer of title or possession, or both, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatsoever of tangible personal property for a consideration." Tenn. Code Ann. § 67-6-102(78)(A). Effective January 1, 2008, the General Assembly amended the Act to include the definition of "resale."[6] *See* 2007 Tenn. Pub. Acts Ch. 602, § 68. In pertinent part, the Act defines "resale" as "a subsequent, bona fide sale of the property, services, or taxable item by the purchaser." Tenn. Code Ann. § 67-6-102(75)(A).

## II.

The "bona fide sale" language in the Act's definition of "resale" lies at the heart of the parties' dispute in this case. The trial court concluded that Niuklee's agreements to lease the Cessna C-400 aircraft to Hometown and Klee were bona fide sales based on its finding that tax avoidance was not Klee's chief objective in forming Niuklee to purchase and lease the aircraft. The Department contends a transaction should not be considered a bona fide sale for tax purposes if it is not objectively reasonable and if one of its chief objectives is tax avoidance. The Department argues that, regardless of what other motivations Klee may have had in forming Niuklee to purchase and lease the aircraft, Niuklee's leases with Hometown and Klee were not bona fide sales because they were not objectively reasonable and were chiefly motivated by tax avoidance. Thus, the Department asserts that the trial court should have disregarded the leases for tax purposes and upheld its use tax assessment based on the aircraft's purchase price. Niuklee argues that Klee's consideration of tax consequences is

---

[6] Because Niuklee purchased the Cessna C-400 aircraft in December 2008, the Act's definition of "resale" is applicable to the purchase.

8

immaterial to the question of whether the leases were bona fide because the decision to form Niuklee to purchase and lease the aircraft was commercially reasonable and otherwise motivated by legitimate business concerns. In support of its argument, Niuklee emphasizes the Tennessee Supreme Court's statement in *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73 (Tenn. 2010) that "the courts should heed Judge Learned Hand's observation that '[a]ny one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes.'" *Id*. at 89 (quoting *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir. 1934)). The Department counters by pointing out that the bona fide sale requirement was not considered by the court in *CAO Holdings* and arguing that Niuklee's reliance on the case is therefore misplaced. [7]

The Act does not specifically define the phrase "bona fide sale" as it appears in its definition of "resale." We must therefore turn to principles of statutory construction to ascertain its meaning. Our role in construing a statute is to ascertain and give effect to the intention and purpose of the legislature. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Whenever possible, we ascertain legislative intent from the natural and ordinary meaning of the words in the statute without a forced interpretation that would limit or expand the statute's application. *Id*. "When these words clearly reflect the purpose of the statute, they should be enforced as written." *CAO Holdings, Inc.*, 333 S.W.3d at 86. In addition to general principles of statutory construction, we must consider the rules of construction specifically applicable to tax statutes. Statutes that impose a tax are to be construed liberally in favor of the taxpayer and strictly against the taxing authority; statutes providing for exemptions from taxation are to be strictly construed against the taxpayer. *Id*. (citing *Eastman Chem. Co.*, 151 S.W.3d at 507). Nevertheless, tax statutes must be given a fair construction. *Id*. We must give effect to the language of the statute and must not use the strict construction rule to thwart the legislature's intent. *Id*.

In our view, the meaning of the phrase "bona fide sale" is clear and does not require construction. The term "bona fide," taken literally, means "in good faith." *See* BLACK'S LAW DICTIONARY 210 (10th ed. 2014). Moreover, the term "bona fide sale" is defined as "[a] sale made by a seller in good faith, for valuable consideration . . . ." *Id*. at 1537. As we stated previously, the Act defines "sale" to include the lease or rental of tangible personal property. *See* Tenn. Code Ann. § 67-6-102(78)(A). Accordingly, a "bona fide sale" of tangible personal property consists of the lease or rental of the property in good faith and for valuable consideration. In this manner, it appears that the bona fide sale requirement is not

---

[7] The Tennessee Supreme Court did not address the bona fide sale requirement in *CAO Holdings* because the aircraft purchase at issue in that case was made prior to the January 1, 2008 effective date of the Act's definition of "resale."

intended to direct a departure from the common law's approval of tax planning in commercial transactions, but to ensure that a resale made pursuant to the sale for resale exemption otherwise serves some legitimate business purpose and is made for valuable consideration.

The evidence demonstrates that Klee's decision to form Niuklee to purchase and lease the aircraft served a legitimate business purpose other than tax avoidance. Hometown's purchase of the aircraft would have required the approval of its co-owner, Hunter Ingram, with whom Klee shared equal ownership of Hometown and equal decision making authority. Because Ingram indicated that he would not grant such approval, purchasing the aircraft through Hometown was not a viable option.[8] Klee's remaining options were to either purchase the aircraft himself or purchase the aircraft through a separate entity. The trial court credited Klee's testimony that he was disinclined to purchase the aircraft himself because of concerns about subjecting his wife, a physician, to personal liability. The Department contends that Klee's supposed liability concerns are undermined by the fact that he subsequently exposed his wife to unnecessary liability by making her a member and officer of Niuklee. We reject the Department's contention. The formation of Niuklee provided protection to Niu because, as a general rule, members of a limited liability company have no personal liability for the debts or obligations of the company. *See Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 828 (Tenn. Ct. App. 2012) (citations omitted). Moreover, we note that Klee also testified that he favored creating Niuklee to purchase the aircraft as opposed to purchasing it himself because he was also concerned about his own liability. Thus, Klee's decision to limit his personal liability by forming a limited liability company was a perfectly logical one. While Klee admittedly considered the tax consequences of forming Niuklee to purchase and lease the aircraft, the record supports the trial court's finding that his decision to do so served a legitimate business purpose other than tax avoidance.

---

[8] The Department contends that the evidence preponderates against the trial court's finding that Ingram refused to approve of Hometown's purchase of the aircraft. The Department's argument is based on Klee's testimony that Advocate Consulting advised him regarding liability and transferability concerns associated with Hometown's purchase of the aircraft. The Department contends that if Ingram blocked Hometown's purchase of the aircraft, there would have been no reason for Klee to discuss that possibility with Advocate Consulting or for Advocate Consulting to advise against it. We reject the Department's argument that this evidence weighs against the trial court's finding. Perhaps Klee sought Advocate Consulting's advice after Ingram's refusal in hopes of changing his mind or, perhaps, Ingram's refusal was based on Advocate Consulting's advice to Klee. We decline to overturn the trial court's finding based on speculation. Moreover, even if Ingram did not refuse to approve of the purchase, the Department's own argument on this point outlines several other legitimate reasons Klee's decision not to purchase the aircraft through Hometown would have been reasonable.

10

Niuklee's leasing of the aircraft to Hometown and Klee was also supported by valuable consideration. The Department does not argue that the rates Niuklee charged Hometown and Klee for use of the aircraft were illusory or were not commercially reasonable. In any event, the evidence presented supports the trial court's finding that the rates—$80 per flight hour for Hometown and $183 per flight hour less the cost of fuel for Klee—were "not pretextual, not a sham, and were commercially reasonable." Suzanne Meiners-Levy, Niuklee's expert at trial and an attorney with Advocate Consulting, testified that the lease rates were calculated using a database of rates her firm maintains from industry contacts that accounts for the make and model of the aircraft, the region of use, the type of lease, and the lessor's familiarity with the lessee. The trial court found that the Department failed to rebut Meiners-Levy's testimony as to the reasonableness of the rates because its expert used data compiled from suburban Chicago rather than Tennessee and from 2014 rather than 2008 when the leases were entered. The evidence in the record does not preponderate against the trial court's finding. Thus, because the evidence demonstrates that the leases served a legitimate business purpose and were made for valuable consideration, we conclude that they satisfy the Act's definition of bona fide sales.

### III.

Next, the Department contends that the leases are not bona fide because Klee never intended to operate Niuklee as a profitable enterprise. The Department acknowledges that Niuklee's success was dependent, in large part, on the continued success and growth of Hometown and that Hometown's business declined sharply almost immediately after Niuklee purchased the aircraft. Nevertheless, the Department contends that even if Hometown had continued to grow as Klee anticipated, Niuklee's rental income would not have covered its costs. The Department's argument is based on the economic substance doctrine commonly employed by federal courts to disregard, for tax purposes, transactions that comply with the literal terms of the tax code but which lack economic reality. *See generally Coltec Indus., Inc. v. U.S.*, 454 F.3d 1340, 1355 (Fed. Cir. 2006) (explaining the economic substance doctrine and its historical development). Pursuant to the economic substance doctrine, courts may disregard transactions that are motivated by tax avoidance and have no reasonable possibility of generating a profit. *See U.S. v. Coplan*, 703 F.3d 46, 91-92 (2d Cir. 2012). The Department contends that the bona fide sale language requires this Court to apply the doctrine here to determine whether Niuklee's lease agreements with Hometown and Klee qualify as bona fide sales. The Department contends that because Niuklee did not have a reasonable chance of profitability, its lease agreements with Hometown and Klee were not bona fide sales.

No Tennessee court has applied the economic substance doctrine, and we reject the Department's assertion that the General Assembly's addition of bona fide sales language

requires this Court to apply it here. The sale for resale exemption's bona fide sale language clearly contemplates an examination of the resale transaction itself, not of the parties engaging in the transaction. In support of its argument, the Department also relies on *Devonair Enterprises, LLC v. Dep't of Treasury*, 823 N.W.2d 328 (Mich. 2012), a Michigan case dealing with nearly identical factual circumstances. In that case, the court upheld the assessment of use tax on the purchase price of an aircraft because the arrangement only benefitted the parties that leased the aircraft and the lessor itself never "gained, benefited, or achieved an advantage from its alleged business of leasing aircraft." *See id.* at 101. However, the court's ruling in *Devonair* was based on the language of Michigan's statutory scheme, which provides a similar sale for resale exemption to a "lessor" who is "engaged in the business of selling, i.e., selling activities with the object of gain, benefit, or advantage." *Id.* The relevant Tennessee statutes do not have any such requirement. As we stated above, the plain language of the Tennessee Act states that a lease of property made for a legitimate business purpose and for valuable consideration constitutes a bona fide sale. The leases Niuklee entered into with Hometown and Klee satisfy those requirements, and we decline to impose additional requirements on top of those set forth by the General Assembly.

## IV.

Finally, the Department contends that Niuklee was a sham by which Hometown and Klee were able to use the aircraft without paying use tax on its purchase price. The Department asserts that the trial court should have disregarded Niuklee's separate legal identity, commonly referred to as piercing the corporate veil, because the company "served solely as an instrumentality or business conduit that Klee and Hometown could use to fly the aircraft for their own purposes." Piercing the corporate veil, however, is not an independent cause of action. "In order to determine whether the 'corporate veil' should be pierced, we would first have to assume that a corporation was liable." *Anderson v. Durbin*, 740 S.W.2d 417, 418 (Tenn. Ct. App. 1987). Thus, in light of our holding on the foregoing issues, we need not address this issue.

## CONCLUSION

Having determined that Niuklee's lease agreements with Hometown and Klee satisfied the definition of "resale" under the Tennessee Retailers' Sales Tax Act, we conclude that Niuklee is exempt from paying sales and use tax on its purchase of the Cessna C-400 aircraft. Accordingly, we affirm the judgment of the trial court and remand this cause for such proceedings as are necessary and consistent with this opinion. The costs of this appeal

are taxed to Richard H. Roberts, Commissioner of Revenue, State of Tennessee, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE